MERCHANTS TRANSPORTATION COMPANY, a corporation, *Plaintiff in Error,* v. ANNIE DANIEL, *Defendant in Error.*

149 So. 401.
Opinion filed April 22, 1933.
Opinion on Re-hearing filed July 18, 1933.

*E. W. & R. C. Davis, Altman & Cooper* and *Johnson, Bosarge & Allen,* for Plaintiff in Error;

*Don Register,* for Defendant in Error.

DAVIS, C. J. — Annie Daniel, a widow, recovered a $5,000.00 judgment against Merchants Transportation Company, a corporation, for the wrongful death of her husband, Emmett Daniel, who at the time of his death, was employed by the County Commissioners of Polk County as a road foreman, and engaged in doing certain road repair work in District No. 4 of Polk County, when he was struck and killed by defendant's truck. The contention here on writ of error is, that upon the whole evidence the Court should have taken the case from the jury by directing a verdict for defendant, and that failing to do so, that it erred in the giving of certain charges to the jury which plaintiff in error asserts were harmfully erroneous.

Insofar as conflicts in the evidence are concerned, they have been settled in plaintiff's favor by the jury's verdict. This Court is committed by a long line of its decisions to the doctrine that the Supreme Court ought not to exercise its powers to reverse a judgment solely on the facts, except with caution and discrimination, and only after careful consideration of the evidence in its most favorable aspect to the party in whose favor the verdict was rendered. The test is not what the Justices of the Supreme Court would have decided, had they been on the jury, but whether or not they as members of an appellate court, viewing the case in its most favorable aspect toward the successful litigant, can say that the jury as reasonable men could not have found the verdict they did and that therefore the verdict, although approved by the trial judge, is wrong, and that by reason thereof the judgment should be accordingly reversed for a new trial. Parrish v. Clark, 107 Fla. 598, 145 Sou. Rep. 848.

And in passing upon defendant's motion for a directed verdict, the rule is that the motion must be considered

and ruled on by the trial judge in the light of its admission not only of all of the facts stated in the evidence adduced, but also its admission of all conclusions therefrom favorable to the adverse party, that a jury might fairly and reasonably infer from the evidence. In directing a verdict the court is governed practically by the same rules that are applicable to demurrers to the evidence. Gunn v. Jacksonville, 67 Fla. 40, 64 Sou. Rep. 435; Stevens v. Tampa Electric Co., 81 Fla. 512, 88 Sou. Rep. 303; Estes v. Manwarren, 100 Fla. 738, 129 Sou. Rep. 917; Gulf Refining Co. v. Ankeny, 102 Fla. 151, 135 Sou. Rep. 521.

Viewing the testimony and other evidence in this case in its most favorable aspect to the plaintiff below, the jury would have been warranted in finding that the driver of the truck had a clear view of the bridge where deceased was working, for a distance of 180 to 200 feet before reaching it; that two of the fellow workmen of deceased threw up their hands, shouted to the truck driver, and attempted to warn the driver to stop long before reaching deceased; that such warning was given at a time when the truck was 175 feet away from the bridge where deceased was working; that although there was no unobstructed view of the bridge for a considerable distance up the road, that the driver of the truck did have a clear view of 180 to 200 feet looking toward the bridge before reaching it; that although the driver claimed that he was only driving his truck around the curve at the modest speed of 25 miles or so per hour, and could, so it was testified, at the speed he said he was driving, have stopped his truck by the efficient brakes with which it was equipped, inside of 50 feet after the brakes' application, that nevertheless, the truck was so driven around the curve in the road and at such speed that, after the brakes were applied and the

wheels of the vehicle locked by such application, it struck and dragged ahead of it a large pile of lumber two feet high, 25 or 30 feet to the open bridge, broke a bridge post, broke a 2 x 8 timber as well as an 8 x 10 timber, and then went, with its brakes still locked and its wheels still dragging 10 to 12 feet further into the open bridge itself where Emmet Daniels was killed.

The inference is also to be drawn from the evidence that the driver of the truck, although charged with knowledge that he was driving his truck on a curve in the highway where more than ordinary care and diligence would likely be required for his own safety and that of others, by bringing his truck under his entire control and keeping a sharp look-out in the direction of the bridge, nevertheless was not keeping such a look-out that he could see two workmen plainly visible while attempting to flag him before he reached the bridge, nor two other workmen on the bridge with the man who was killed, until just about the moment of running into the bridge and causing the injury and death complained of.

Section 1318 C. G. L. (Chapter 10186, Acts of 1925, Section 1) provides that the speed of all motor vehicles shall be *reduced* on curves in such manner as to keep the vehicle under the "entire" control of the driver. The effect of the statute is to impose upon the drivers of motor vehicles the special duty to keep such a look-out for other vehicles and persons on curves that, if the road be not clear, "entire" control of the motor vehicle can be exercised by the driver in such manner as to stop or turn the motor vehicle aside in ample time to avoid serious injury or death to others who must be anticipated as likely to be brought into view in the course of traversing a curve in a highway where the driver's range of view is obscured

by the nature of the viatic curvature and the topography of the earth thereat. 2 R. C. L. 1184. A consideration of the foregoing rule of conduct viewed in connection with the admissions of fact implied from the evidence by defendant's motion for a directed verdict, demonstrates that the motion was properly denied.

Defendant went to trial on several special pleas that presented the issue of contributory negligence of the deceased as related to the doctrine of "the last clear chance," as applied to negligence cases. The contributory negligence of the deceased was alleged to have been that he, as a road foreman, was careless and negligent in attempting to work on the bridge where he was killed in that in his work he exposed himself to danger of being struck by an approaching motor vehicle without undertaking at the same time to protect himself from such danger by placing upon the road-way, at sufficient distances in both directions from the place of danger, signs or signals or a look-out to give warning to motor vehicles driving on the highway in that vicinity that the road was closed to traffic by reason of the making of repairs to the bridge upon which deceased was engaged in working. It was also charged that deceased had ample time, before being struck, to get out of the way of defendant's truck, had he been reasonably alert to avoid the threatened injury he must have realized to be imminent when he saw the truck about to run into the open bridge, and that therefore it was the deceased and not the defendant's truck driver, who had the "last clear chance" to avoid the wrongful death.

The Court charged the jury, at the request of the plaintiff, and over defendant's objection, as follows:

"In this case, if you should find from the evidence that the deceased, Emmet Daniel, was careless and negligent

in exposing himself to danger, but that after the said Daniel had so exposed himself to danger the driver of defendant's automobile could have avoided the injury by using ordinary care in keeping his automobile under proper control as he drove around the curve and by keeping a proper look-out ahead and that said driver failed to use such ordinary care and that his failure in this respect was the cause of the injury, then you should find for the plaintiff."

"If you find from the evidence that the conditions made and placed around the torn-up bridge by the deceased Emmet Daniel, and his co-workers were such that any reasonably careful driver of an automobile approaching the bridge from either direction and observing reasonable care as to speed and lookout ahead would see the dangerous condition of the bridge in time to stop his car and avoid the injury, then you should find that there was no con-tributory negligence on the part of the deceased, Emmet Daniel."

The party who last has a clear opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. Such is a simple statement of the doctrine of "the last clear chance." The *last clear chance* doctrine is not an exception to the general doctrine of contributory negligence. It does not permit one to recover in spite of his contributory negligence, but merely operates to relieve the negligence of a plaintiff or deceased in a particular instance, which would otherwise be regarded as contributory, from its character as such. This result it accomplishes by characterizing the negligence of the defendant, if it intervenes between the negligence of plaintiff or deceased, and the accident, as the sole proximate cause of the injury, and the plaintiff's antecedent merely as a condition or remote cause. The antecedent negligence

of the plaintiff or deceased having been thus relegated to the position of a condition or remote cause of the accident, it cannot be regarded as contributory, since it is well established that negligence, in order to be contributory, must be one of the proximate causes. Davies v. Mann, 10 Mees. & W. 546, 6 Juris, Part. 2, 954; Tanner v. Louisville & N. R. Co., 60 Ala. 621; Smith v. Norfolk & S. R. Co., 114 N. C. 728, 19 S. E. 863, 923, 25 L. R. A. 287; Bogan v. Carolina Central R. Co., 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418, and notes. The doctrine of last clear chance has been heretofore followed in this State in the case of Georgia, F. & A. R. Co. v. Cox, 75 Fla. 714; 79 Sou. Rep. 276. It has likewise been followed and approved by the Supreme Court of the United States in Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270, and Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. Rep. 679, 36 L. Ed. 485.

The Courts are wide of an agreement as to the extent of the last clear chance doctrine as applied to the operation of automobiles and the like. It is certain however that there are two situations in which it is uniformly applied: (1) Assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, whenever the person in control of a motor vehicle actually sees his situation and should appreciate his danger, the last clear chance rule applies without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury; (2) Where the person in control of a motor vehicle, by keeping a reasonably careful look-out, commensurate with the dangerous character of the motor vehicle while in operation *and the nature of the locality,* could have discovered and appreciated another's perilous situation in time by the exercise of reasonable

care to avoid injuring him, and the injury results from the failure to keep such look-out and to exercise such care, then the last clear chance rule applies, regardless of the injured person's prior negligence whenever that negligence has terminated, or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This latter phase of the rule applies whenever injury results from new negligence, or from a continuance of the operator's negligence after that of the injured party has so ceased or culminated. Teakle v. San Pedro L. A. & S. L. R. Co., 32 Utah 276, 90 Pac. Rep. 402, 10 L. R. A. (N. S.) 486; Nicol v. Oregon-Washington R. & Nav. Co., 71 Wash. 409, 128 Pac. Rep. 628; Moss v. E. H. Stanton Co., 75 Wash. 220, 134 Pac. Rep. 941; Bullock v. Wilmington & W. R. Co., 105 N. C. 180, 10 S. E. Rep. 988.

The last clear chance rule is not to be confused with the doctrine of comparative negligence. The latter doctrine (comparative negligence rule) is not recognized in Florida, except in certain special cases by statute. Neither is the doctrine of last clear chance applicable where the negligence of each party is concurrent. St. Louis & S. F. Ry. Co. v. Schumacher, 152 U. S. 77, 14 Sup. Ct. Rep. 479, 38 L. Ed. 361; Scharf v. Spokane & I. E. R. Co., 92 Wash. 561, 159 Pac. Rep. 797; Moss v. Stanton, *supra*. Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or proof of circumstances which will put the one charged to implied notice of the situation: Hartley v. Lasater, 96 Wash. 407, 165 Pac. Rep. 106.

The two charges to the jury that were complained of by defendant below, were not erroneous under the rules to which we have just adverted. To be sure, they did not

undertake to discuss every phase of the law that might have been stated on the subject of the "last clear chance" rule as applied to the case at bar. But the charges were good as far as they went. If defendant desired additional instructions by way of explanation or qualification of that which had been stated, it should have prepared and requested the giving of such additional instructions. The mere failure of the trial judge to charge the jury on a particular phase of a pending case, the law of which has been dealt with in a general way in other appropriate charges, is not reversible error in the absence of some proposal and denial of a properly requested charge. Taylor v. State, 98 Fla. 881, 124 Sou. Rep. 445.

Defendant, had it so requested, would have been entitled to a charge that, if simultaneously with defendant's negligence the deceased had a chance to escape the injury by himself exercising ordinary diligence, and did nothing to extricate himself from danger, the doctrine of "last clear chance" would not apply. This is so because in that case deceased would have been guilty of concurrent negligence, which is a form of contributory negligence that bars recovery. Emmons v. Southern Pacific Ry. Co., 97 Ore. 263, 191 Pac. Rep. 333; Dyerson v. Union Pac. R. Co., 74 Kan. 528, 87 Pac. Rep. 680, 7 L. R. A. (N. S.) 132, 11 Ann. Cas. 207.

But such a charge as that just referred to would amount to a proper charge on the subject of "concurrent" negligence, and such a charge as ought to have been specially requested if defendant had desired a charge to be given on that subject as a means of informing the jury concerning the distinction between liability under the rule as to "the last clear chance," and non-liability under the rule as to "concurrent" negligence. Pensacola Electric Co. v. Bissett,

59 Fla. 360, 52 Sou. Rep. 367; Turner v. State, 99 Fla. 246, 126 Sou. Rep. 158; Tindall v. State, 99 Fla. 1132, 128 Sou. Rep. 494.

There is ample evidence in the record tending to show that defendant's truck driver was guilty of negligence in driving his truck around a curve in the road at an excessive speed not permitting of his "entire' control of the truck. Coupled with this was circumstantial proof of his failure to keep a look-out ahead toward the place where the nature of the locality and the degree of curvature of the road suggested caution and alertness in anticipation unseen, but reasonably to be anticipated, perils on the highway to be traversed. The circumstances showed that defendant's failure to observe due care continued up to the very instant of the accident complained of, and that it was to defendant that there was given the "last clear chance" to avoid the injury and death sued for. So the facts in evidence warranted the verdict holding defendant liable therefor, notwithstanding the fact that deceased may have been, in the first instance, guilty of negligence of his own in assuming a position of peril when he went to work on the bridge without first erecting warning signals on the highway.

And if we do not fail to give effect to the positive testimony of deceased's fellow workers that they attempted in due time to flag the defendant's truck, whose driver failed to see or give heed to their warning, there is this additional evidence to refute the idea that deceased was, as to defendant as a traveler, derelict in his duty in not putting out warnings on the highway, since the actually given warning signs of deceased's fellow workers made known as the truck approached the bridge, served under the circumstances, as an adequate substitute for the warnings otherwise omitted from the highway.

Ordinarily questions arising upon the evidence in a negligence case as to who had "the last clear chance" to avoid a particular injury alleged to have been negligently inflicted by defendant are questions of fact, and the jury's decision thereon is final, where there is a conflict on that point in the evidence, and it appears that the jury's verdict was rendered under appropriate instructions concerning the applicable principles of law. This was just such a case, as has been demonstrated.

Finding no reversible error in the record, the judgment of the Circuit Court should be affirmed and it will be so ordered.

Affirmed.

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

BROWN, J., concurs specially.

BROWN, J., (Concurring Specially).—As I understand our former decisions, this Court has never expressly adopted the doctrine of "the last clear chance," though in working out the principles of actionable negligence, contributory negligence and proximate cause, we have in effect adopted the essentials of such doctrine in practical application, but not to the extent of making this doctrine an exception to the general rule forbidding recovery by a plaintiff guilty of negligence which proximately contributed to his injury. This doctrine is defined on pp. 144-145, 22 R. C. L., is as follows:

"Where the negligence of the defendant is the proximate cause of the injury for which suit is brought, and that of the plaintiff only the remote cause, the plaintiff may recover notwithstanding his negligence. From this principle arises the well established exception to the general rule that if, after the defendant knew, or, in the exercise of ordinary

care, ought to have known, or the negligence of the plaintiff, he could have avoided the accident, but failed to do so, the plaintiff can recover. This principle has been styled the doctrine of 'last clear chance,' and is regarded as an exception to the general rule forbidding recovery by a plaintiff guilty of contributory negligence. In cases of this class the subsequent negligence of the defendant in failing to exercise ordinary care to avoid injuring the plaintiff becomes the immediate or proximate and efficient cause of the accident, which intervenes between the accident and the more remote negligence of the plaintiff. The doctrine of last clear chance is applicable only when the negligent conduct of which the plaintiff has been guilty was not a proximate cause of the injury. It can never apply to a case where the negligence of the person injured continued up to the very moment of the injury, and was a contributing and efficient cause thereof. But it makes no difference how short an interval occurs between the negligent act of the plaintiff and that of the defendant, if the latter had time to discover the danger and avert it by the exercise of ordinary care."

It will thus be noted that in spite of the statement that this doctrine is regarded as an exception to the general rule forbidding recovery by a plaintiff guilty of contributory negligence, the doctrine as stated in the above quotation harmonizes quite closely with the previous decisions of this Court on the subject of contributory negligence and proximate cause. See Seaboard Air Line Ry. Company v. Watson, 94 Fla. 571, text 581, 582, 113th So. 716, text p. 720, and cases cited, where among other things, it is said:

"It is negligence which proximately causes or contributes to causing the injury or damage which creates legal liability. There may be concurrent causes of a single injury—concur-

rent negligence of two separate and distinct agencies—which, operating contemporaneously, together constitute the efficient proximate cause of the injury inflicted, and without either one of which the harm would not have been done. But if two distinct causes are successive and unrelated in their operation they cannot be concurrent. One of them must be the proximate and the other the remote cause, and the law will regard the proximate as the efficient and responsible cause, disregarding the remote cause. 22 R. C. L. 128."

I am inclined to think that the charges given by the Court to the jury which are quoted in the foregoing able opinion by Chief Justice DAVIS are not entirely correct. And in fact the second charge appears to be positively erroneous, in that it invades the province of the jury, and also instructs them, in effect, that if the evidence showed that the conditions made and placed around the torn up bridge by the deceased and his co-workers were such that any reasonably careful driver of an automobile approaching the bridge from either direction and observing reasonable care as to speed and lookout ahead, would see the dangerous condition of the bridge in time to stop his car and avoid the injury, then the jury should find that there was no contributory negligence on the part of the deceased. It is entirely conceivable that all of the facts hypothesized in this charge might have been true, and yet if the deceased saw the approaching automobile and was in a position where he had reasonable time and opportunity to get out of the way and protect himself from danger, he might have been guilty of contributory negligence proximately contributing to his injury. In other words, the existence of the particular conditions described in the charge did not, as a matter of law, eliminate the question of plaintiff's contributory negligence from the case. It was held in Grand Trunk Ry. Co. v. Ives, 144 U. S. 408,

12 S. C. 679, 36 L. ed. 485, cited in the majority opinion, that in determining whether the deceased was guilty of contributory negligence the jury are bound to consider all the facts and circumstances bearing upon that question, and not select one particular prominent fact or circumstance as controlling the case to the exclusion of all the others. It follows from this that the instructions to the jury should not conflict with the principle so announced. I think this is in harmony with our own decisions. See Mortellaro & Co. v. A. C. L. Ry. Co., 91 Fla. 230, 107 So. 528, and cases cited.

But I am not at all clear that the error above pointed out caused any miscarriage of justice in this case. Even if, as testified by the truck driver (in conflict with plaintiff's witnesses), the deceased raised up and saw him just before the deceased was struck, and yet did not move out of the way, this was by no means absolute proof of contributory negligence. When a person is placed in sudden and imminent peril by the negligent act of another, and does or fails to do some act which he would not otherwise have done, and injury results, the negligent act which created the sudden peril may still be the real and proximate cause of the injury.

So also the negligent speed of the truck, under the peculiar circumstances of this case, and the failure of the driver to check it, appears to have continued to be the operative and proximate cause of the injury up to the very moment that the injury was inflicted, as in the case of Fla. Motor Lines v. Casad, 98 Fla. 720, 124 So. 180. See also Frazee v. Gillespie, 98 Fla. 582, 124 So. 6. The verdicts in both of these cases were allowed to stand.

Not being entirely clear that, on the facts in this case, as disclosed by the evidence, the judgment of the court below

should be reversed, I will not dissent from my associates in their conclusion that it should be affirmed.

## On Re-hearing.

PER CURIAM.—Re-hearing was granted in this case and a re-argument had before the Court *en banc*. A re-examination of our previous opinion, as well as a careful re-consideration of the case as now presented, viewed in the light of the oral argument on re-hearing, as well as the able and exhaustive briefs filed with us by counsel for the respective parties, has failed to convince us that there is any occasion for changing what we have heretofore said or decided in this case. Therefore the judgment should be re-affirmed and it is so ordered.

It may be added to the foregoing statement, that the record shows that in addition to the two charges given to the jury, which are complained of by plaintiff in error as grounds for reversal, it appears that there were other charges given to the jury at defendant's request, which fully informed the jury that plaintiff could not recover if it appeared that the plaintiff's deceased husband, under the circumstances of the case, did not exercise for his own safety, that degree of care which an ordinarily prudent man would have used under the circumstances of the situation that led to his injury and death, and that such failure on deceased's part to use such due care contributed to his own injury and death, even though defendant were proved negligent in its conduct as charged. Thus all points of law applicable to the issues were, in the Court's charges considered as a whole, substantially and correctly stated, which is all that the law requires to be done. Atlantic Coast Line R. Co. v. Shouse, 83 Fla. 156, 91 Sou. Rep. 90; Charlotte Harbor &

N. R. Co. v. Truette, 81 Fla. 152, 87 Sou. Rep. 427; Cross v. Aby, 55 Fla. 311, 45 Sou. Rep. 820.

Re-affirmed on re-hearing.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J. concurs in conclusion.

ELLIS, J., concurs specially.

---

ELLIS, J. (Specially concurring)—Since the opinion by Mr. Chief Justice DAVIS was filed in this case, which was on April 22, 1933, and in which I concurred, my views concerning the treatment of the case insofar as the opinion discusses the doctrine of the "last clear chance" have changed in the following particulars: In the first place the discussion of the doctrine of the "last clear chance" as applied to the circumstances of the case at bar is wholly unnecessary and can lead to no result but confusion in the public mind as to its application in a given case;. Secondly, the rule and the reasons for it have not been generally agreed upon by the courts when endeavoring to apply it; Thirdly, there are no less than five divergent theories which have been discussed and urged as affording the ground for the necessity of such a rule; Fourthly, whether it may ever be invoked against the plaintiff, the injured party, is by no means settled by the decisions or the logic underlying the rule; Fifthly, the doctrine was not disscused nor even mentioned in the case of Georgia, F. & A. R. Co. v. Cox 75 Fla. 714, 79 Sou. Rep. 276; Sixthly, the statement in the opinion that "The party who last has a clear opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered solely responsible for it," and that is "a simple statement of the doctrine of 'the last clear chance'" is not an

accurate summing up of the doctrine nor the reasons under-lying it.

Contributory negligence by the plaintiff's decedent in the case at bar would preclude her recovery. Perceiving imminent danger to himself and failing to get out of its way is nothing but contributory negligence, a voluntary sacrifice of himself which would preclude recovery by him for injuries sustained even against a railroad corporation under the statute notwithstanding the defendant was guilty of negligence. The rule of the "last clear chance" was founded in considerations of public policy resting upon the government's dependence upon its citizenship, and its protection of a citizen in the uninterrupted enjoyment of his personal security which he has as his birthright and in which he is entitled to the fullest protection society can give. Indianapolis Street R. Co. v. Bolin, 39 Ind. App. 169, 78 N. E. Rep. 210. So that in cases where the *injured* party is negligent to the degree which would ordinarily preclude his recovery for injuries sustained, he may nevertheless recover if the defendant was without negligence but, perceiving the danger in which the plaintff's negligence had placed him, the defendant might still by the exercise of reasonable care have avoided injuring the plaintiff and did not do so.

In determining whether the defendant could have avoided injuring the plaintiff the rule of the last clear chance applies, that is to say, did the defendant after perceiving the plaintiff's danger have a "clear chance" under the circumstances to avoid the injury? If he did have such a chance and failed to avail himself of it to avoid the injury the plaintiff may still recover notwithstanding even his gross negligence in placing himself in a position of danger.

It was in this humanitarian theory that the rule of the last clear chance was founded. The application of it to the

plaintiff reverses the reason and policy on which the rule rests. It is equivalent to saying to an injured person that although you were in a place where you had a right to be, where your legitimate labor required you to be, and danger approached you unobserved, caused by the wanton recklessness of the person injuring you, although you are without fault in being where you are, yet if you fail to appreciate your impending danger and have a reasonable time by the exercise of physical agility and mental alertness which an average normal person is supposed to possess but of which nature at the beginning of your existence or through the processes of time has deprived you and scramble out of the way of the unlawful force put in motion by a wantonly careless defendant you cannot recover. Such an interpretation of the doctrine is a perversion of it. It binds the injured person with fetters intended for the wrong doer, the person committing the injury.

In the State of Georgia the plaintiff is prohibited from recovering if he could have avoided the defendant's negligence. But that rule, which is the application of the rule of last clear chance to the plaintiff, is of statutory authority in that State. See Smith v. Central Railroad and Banking Co., 82 Ga. 801, 10 S. E. Rep. 111.

For instances of the application of the doctrine to the defendant in cases where the plaintiff's own negligence placed him primarily in a dangerous situation and the defendant was not negligent primarily but might have reasonably discovered the defendant's danger in time to avoid the injury by the exercise of reasonable care, see Inland and Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 33 L. Ed. 270, 11 Sup. Ct. Rep. 653; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 36 L. Ed. 485, 12 Sup. Ct. Rep. 679; Texas & P. Ry. Co. v. Nolan, 11 C. C. A. 202, 62 Fed. Rep. 552.

In that case the doctrine of Davies v. Mann, 10 Mees. & W. 546, (12 L. J. Exch., N. S., 10, 6 Jr. 954), was not applied. Louisville & N. R. Co. v. East Tennessee, V. & G. Ry. Co., 9 C. C. A. 314, 60 Fed. Rep. 993, in that case it was applied, and in each case the plaintiff was permitted to recover. New York, N. H. & H. R. Co. v. Kelly, 35 c. C. A. 571, 93 Fed. Rep. 745, in which the doctrine of "last clear chance" was not applied to a *"mere omission"* to discover plaintiff's danger, and holding that such omission cannot be regarded as wantonness.

Frazer ;v. South & North Ala. R. R .Co., 81 Ala. 185, 1 South Rep. 85, where the negligence of the plaintiff, or the deceased, originally placed him in danger and such negligence was continuing there was no occasion for the application of the doctrine and recovery could be upheld only on the ground that the act of the defendant was wanton or wilful; Hot Springs St. Ry. Co. v. Johnson, 64 Ark. 420, 42 S. W. Rep. 833; L. R. & F. S. Railway Co. v. Finley, 37 Ark. 569; Flynn v. S. F. & S. J. R. Co., 40 Cal. 14. In California the doctrine seems to be applied in cases where defendant failed to exercise reasonable care to observe plaintiff's danger as well as failure to exercise reasonable care to avert it. Oliver v. Denver Tramway Co., 13 Colo. App. 543, 59 Pac. Rep. 79; Palmer v. The Chicago, St. Louis and Pittsburg R. Co., 112 Ind. 250, 14 N. E. Rep. 70; holding to the wilful or wanton negligence theory of which the defendant be guilty after discovering plaintiff's danger. Chicago West Division Ry. Co. v. Ryan, 131 Ill. 474, 23 N. E. Rep. 385; Union Pac. R. W. Co. v. Rollins, 5 Kan. 167; L. and N. R. Co. v. Earl, 94 Ky. 368, 22 S. W. Rep. 607; Kramer v. N. O., City & Lace R. R. Co., 51 La. Ann. 1689, 26 Sou. Rep. 411; O'Brien v. McGlinchy, 68 Me. 552; Murphy v. Deane, 101 Mass. 455, 3 Am. Rep. 390.

In that case the doctrine was seemingly applied to the plaintiff in case where her negligence and that of the defendant were contemporaneous and the plaintiff's negligence continues to the point of avoiding the accident where it was reasonably possible for her to do so. Such citations may be continued until they embrace all the jurisdictions of this country. It will serve no beneficial purpose to continue them. They demonstrate that the "last clear chance" doctrine grew out of the rule of contributory negligence and relieves one from the hardships of its unyielding and inflexible terms. Many cases have transpired in which the plaintiff although negligent should not thereby be denied relief if the defendant might in reason have avoided the injury.

The difficulty arises in applying the doctrine to the particular group of facts. In the case at bar, however, there is no occasion for the application of the doctrine to the defendant because its negligence was the primary factor in the case and continued throughout the entire transaction up to and including the killing of the plaintiff's deceased. If in a case like this by any sort of reason the doctrine may be deemed applicable to the plaintiff the impracticability of its application is most apparent. At what moment of time, or at what point on the disastrous course of the defendant's truck between the curve and the point of impact upon the plaintiff's deceased, occurred the last clear chance for the deceased to have avoided the impending death, would depend upon accurate information as to the speed of the truck, the moment of apprehension by the deceased and his particular mental and physical alertness and ability. In applying the doctrine to the defendant no such difficulty is met because the driver of the truck should have had his machine under control 180 feet away from the point where the deceased was struck, and it was the defendant's duty while driving an

automobile truck upon the highway to be constantly upon the look out for pedestrians upon it and persons whose duty required them to be upon it engaged in its maintenance, and the duty was emphasized in this case by the fact that in violation of the duty cast upon the defendant by the statute to have the truck under complete control at the curve the driver continued the unreasonable speed of the truck until it reached the bridge and the injury was committed.

I agree to the conclusion reached but do not deem the discussion of the "last clear chance" doctrine as to the possibility of its application to the plaintiff in such cases as this to be necessary.