**CONSUMERS LUMBER & VENEER CO. v. ATLANTIC COAST LINE R. CO.**

No. 9588.

Circuit Court of Appeals, Fifth Circuit.

Feb. 1, 1941.

Rehearing Denied March 10, 1941.

E. W. Davis and R. C. Davis, both of Orlando, Fla., for appellant.

Warren B. Parks and LeRoy B. Giles, both of Orlando, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for damages to a loaded tractor and trailer, struck and demolished while overturned and stalled on a railroad crossing.

The claim was that, though thereafter plaintiff by flares and danger signals gave warning of impending danger, the engineer of defendant's train either saw or should have seen the warnings, and negligently ran into and destroyed the tractor and trailer and a part of its load.

The defense was that the tractor was overturned on defendant's track as a result of plaintiff's negligence in loading it, and that the record was devoid of evidence that the engineer either saw or should have seen its predicament in time to avoid colliding with it.

The district judge agreed with plaintiff that the defendant would be liable if defendant's employee, the engineer of the train, either saw the danger or in the exercise of ordinary care ought to have seen it and thereafter failed to use due care in attempting to stop his train and avoid the collision. He agreed with defendant though, that if the testimony of the engineer and fireman was true, everything was done that could reasonably have been done to avoid the collision, and that nothing in the physical surroundings contradicted the testimony of engineer and fireman in any material matter. He therefore directed a verdict for defendant. Plaintiff, appealing from the judgment on the verdict is here insisting that there was ample evidence to take the case to, there was error in withdrawing it from the jury.

■■ We agree with the plaintiff. It is settled law in Florida as generally elsewhere, that "the party who last has a clear opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered solely responsible for it." Merchants'. Transportation Co. v. Daniel, 109 Fla. 496, 149 So. 401, 403. It is likewise settled there that "a plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may nevertheless recover for the harm caused thereby if, immediately preceding the harm, the plaintiff is unable to avoid it by reasonable diligence and care and the defendant either knows the plaintiff's situation and realizes the helpless peril involved therein, or knows the plaintiff's situation and has reason to realize the peril involved therein, or would have discovered the plaintiff's situation, and then had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harm to the plaintiff." American Law Institute, Torts, Negligence, Par. 479, p. 1253; Merchants' Transportation Co.· v. Daniel, supra; Dunn Bus Service v. McKinley, 130 Fla. 778, 178 So. 865; White v. Hughes, 139 Fla. 54, 190 So. 446.

■ This being the law, .it may not be doubted, we think, that the evidence made out a case for a jury verdict.

The undisputed evidence places the overturning of the truck and the extrication of its driver at a time considerably before the arrival of the train, due to the train's being about twelve minutes late out of Kissimmee. It is also undisputed that flares were placed south of the crossing and that the driver of the truck took one of them and walked down the track with it, signalling as he went.

The track was straight for 2 miles south of the crossing and for at least that distance there were no obstructions and the crossing was in full view. The headlight threw a beam in which objects could be seen not more than 900 feet away. The train was late and it was traveling at .a speed estimated at 65 or 70 miles or more an hour, but not measured by a speedometer, the engine having no such device, just before the brakes were applied. The proof is that the minimum distance with a dry track and everything in his favor, within which the engineer could stop at that speed was 1500 to 1600 feet. Both the fireman and engineer testified they saw the red lights on the track at or before the whistling post was reached. The fireman saw them when at about 2000 feet from the crossing. The engineer said he saw them when about at the whistling post and that they were a good distance ahead of him, that he saw them move when he was about a thousand feet from the crossing and it was then that he applied his brakes.

If this were all the evidence, we think it would make out a jury case, for, it presents a case of a train approaching a crossing as to· which it was its duty to maintain a lookout at a speed so great that it would not be possible for the train to be stopped within the distance the engineer could see objects on the crossing, and that though he saw red lights some distance down the track, he didn't bring his train under control sufficiently to stop it before reaching the crossing. But this is by no means all. There is the positive testimony of · the truck driver that he walked up the track 1400 feet from the crossing, waving his flare.

While the testimony as to the distance he walked is contradicted by the estimates of some of the witnesses from the standpoint of a jury case this is immaterial, for there is his positive testimony that he had gotten to a point, 1400 feet from the crossing before the train passed him, that he had been swinging his flare all the time, and there is the testimony of the engineer and the fireman that they saw the flares when they were quite a distance away, but they mistook them for the taillight of an automobile or a train.

■ It is true enough .that a speed of 65, 70 or even 80 miles an hour, the speed at which the truck driver testified the engineer said he was going, is not unlawful and that the mere fact that the train was run at that speed is not of itself sufficient evidence of negligence to base a verdict on. But when all the evidence is taken together and it is considered that the collision occurred on a traveled through highway, 1500 feet from the whistling post, that there were flares put out and there was a man walking up the track swinging a flare to warn the engineer, it

seems quite clear that it was for the jury to say whether plaintiff had made out its case. The judgment is reversed and the cause remanded for further and not inconsistent proceedings.

Reversed and remanded.

HOLMES, Circuit Judge, concurs in the result.