74 So.2d 574 (1954)
WAWNER
v.
SELLIC STONE STUDIO.
Supreme Court of Florida. En Banc.
July 13, 1954.
As Amended on Denial of Rehearing September 28, 1954.
*575 Charles H. Wakeman, Jr., Miami, for appellant.
A. Lee Bradford, Carl P. Stephens, Jr., and Dixon, DeJarnette & Bradford, Miami, for appellee.
DREW, Justice.
This appeal arises from a negligence suit in which the jury found for the defendant, who is the appellee here. There is little, if any, dispute about the material facts. The main question presented is whether the lower court erred in failing to charge the jury with reference to the doctrine of "Last Clear Chance."
About 3:30 p.m. on January 1, 1953, a clear day, appellant, plaintiff below, a surveyor, was operating a surveyor's transit in the City of Miami at a place five feet north and five feet west of the center of the intersection of 3rd Street and N.W. 27th Avenue. This position placed him in the southbound traffic lane of N.W. 27th Avenue. While so situated and while, according to his uncontradicted testimony, looking west through the transit, appellant was struck by the left front of appellee's southbound truck and carried some fifty to sixty feet from the point of impact.
The driver of the truck, Reuben Harris, was the only witness for appellee and he testified in substance to the following: Reuben was driving the vehicle, which was a 1947 Ford 1 1/2 or 2-ton truck and loaded with breakable fabricated stone, about 25 to 30 miles per hour along the right side of the street about 2 feet west of the center line; and he saw appellant in the street standing behind a tripod when he, Reuben, was within "approximately 50 to 60 feet" from appellant, about which distance Reuben stated, "I don't know exactly, but that was my guess." He wasn't sure whether appellant was looking through the instrument "because I didn't pay him that much attention. I do know he was there," and also could not swear in what direction appellant was facing "because I didn't pay that much attention." Reuben further stated, "After I seen him I was driving and a car came on my right and passed in front of me, and of course it cut my vision at the time before I hit Mr. Wawner. When I did see Mr. Wawner I was right on him. I couldn't stop, and when I got right there to him and hit him, evidently he was hanging on. I didn't stop right then, but I slowed down, because I figured I might go over him. I slowed down till he fell off. I saw he was in the street and I pulled over." Pertaining to the car which passed him on his right, Reuben stated that it was going "much faster" than he was and pulled right in front of him and "kept straight on going." Reuben also stated that he did not at any time apply enough pressure on the brakes of the truck to make a tire mark on the street.
There were no skid marks at the accident scene. A witness for plaintiff testified that he had followed the appellee's truck directly at its rear for a block or two preceding the accident, that the truck traveled in a straight line at a constant speed of about 30 miles per hour right up to the point of impact without the brakes being applied, and that immediately prior to the accident he heard no horns sounded and saw no cars pass in the same direction on either side.
The court below charged the jury on the law of contributory negligence but refused to instruct on the doctrine of last clear chance. We are of the opinion that under the circumstances the jury was clearly misled to appellant's harm for the reasons stated by us in a similar case, Williams v. Sauls, 151 Fla. 270, 274, 275, 9 So.2d 369, 371. See also Merchants' Transport Co. v. Daniel, 109 Fla. 496, 149 So. 401; Miller v. Ungar, 149 Fla. 79, 5 So.2d 598.
In the case of Williams v. Sauls, supra, the plaintiff's husband was struck and killed by defendant's truck. The driver at night *576 had visibility sufficient to see ahead for nearly a quarter of a mile away. The driver saw deceased when he first came into sight and later when he started across the road at a time when the driver was still 35 feet away. Thereafter the driver did not apply his brakes sufficiently to show skid marks and swerved to the left but struck deceased with the right fender. In reversing judgment for the defendant, this court, speaking through Mr. Justice Adams, said:
"Passing now to the plaintiff's claim that the court erred in failing to charge on the last clear chance rule. The gist of the rule is that the jury ascertain whose negligent act was the immediate cause of the injury. The commission of the last or immediate negligent act renders all antecedent acts of negligence remote and immaterial. * * *
"* * * Under the charge as given the jury could and no doubt did conclude that deceased negligently entered the road, and that such negligence contributed to his injury. The very claim of the benefit of this doctrine, however, is to admit a wrongful act in getting into a perilous position. If he is to remain bound by the original wrong, then he is deprived entirely of the benefit of relief for defendant's wrongful act which may be the immediate cause of the injury."
We think the Sauls case controls the case at bar. But the appellee contends that the doctrine of last clear chance does not apply to the instant facts, first, because the appellee driver did not have sufficient time to avoid the accident after he became aware that plaintiff was in danger, and, second, because the plaintiff's negligence was concurrent with that of appellee.
These dual contentions actually present but one proposition. This is so because where a person has negligently placed himself in a dangerous situation upon a highway and an approaching motorist "actually sees his situation and should appreciate his danger, the last clear chance rule applies without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury; * * *". Merchants' Transport Co. v. Daniels, 109 Fla. 496, 503, 149 So. 401, 403, supra. This proposition also was the substance of our holding in Williams v. Sauls, supra, where we stated that the commission of the last negligent act renders prior negligent acts "remote and immaterial."
For example, assume a situation where an approaching motorist sees a person on a highway. If the motorist sees the person in a position of danger under circumstances from which the motorist does or should realize the other is not likely to extricate himself, the question is whether the motorist, at the time he realized, or should have realized, the other's peril, then had sufficient time and means to avert the threatened injury. If the motorist has such time and means, he clearly has in fact the last clear chance to avert harm, and the doctrine is applicable. It applies because, at the moment the motorist did or should have realized the peril, a duty arises for him to use his existing ability to avoid injury. Failure to do that, resulting in injury, is negligence which is the proximate cause of the accident. Conversely, if the circumstances under which the person is on the highway are not such as to put the motorist on notice that the other will not act to avert harm to himself, or, if such circumstances do not in fact arise soon enough to give the motorist notice of the peril in time to avert harm, the motorist does not have a last clear chance to avoid the accident and the doctrine is not applicable. It does not apply because the motorist was not guilty of any new negligence. There was not a time when he had existing ability to avoid injury after he did or should have realized another's peril, and therefore no new duty arises in that respect. In this latter situation the inapplicability of the doctrine can be expressed in two ways: it can be said that the motorist did not have an existing ability to avoid injury after he was or should have been aware of the peril and it can be said that the negligence of the other person continued to the time of injury. Either expression achieves the same result.
*577 Determination of whether a new duty arose on the part of the motorist is made by examining closely the situation and conduct of the person on the highway. From that examination it must be determined whether the situation and conduct of such person was sufficient to put the motorist on notice of the other's peril in time to avoid it. Some factual situations are relatively easy to solve. For example, if a person is lying drunk in the street through his own negligence, a motorist who sees him there in time to avoid injury must use due care to do so. Under those circumstances a motorist cannot continue forward without using his ability to avoid an accident and thereafter excuse himself because of the other's antecedent negligence. Also, if, instead of being drunk, the pedestrian negligently had kneeled to tie his shoe with his back to oncoming traffic and a motorist so sees him in time to avert injury, the doctrine is applicable because the other person is in a situation of inattention under circumstances sufficient to put the motorist on notice that the other will not likely take steps to avert harm to himself.
Perhaps a more forceful example would be that of a blind person with a Seeing Eye dog or a white cane, crossing a busy street intersection against the light. Under such circumstances simple humanitarian instincts would compel a driver of a car to avoid injury to such person who patently was unable to protect himself although negligent in getting into such a position.
On the other hand, it may be clear that a pedestrian's negligence is the sole cause of his own misfortune. This is particularly true in those instances where there is nothing to put a defendant, seeing him, on notice that the pedestrian is about to place himself in peril. This was the situation in Martin v. Rivers, Fla., 72 So.2d 789, 791, where the plaintiff's decedent was struck and killed by defendant's train. In that case the train, in the process of stopping at a city station, crossed a street intersection at about ten miles per hour. The train's bell was ringing and its two headlights were burning, and flashing red traffic signals were in operation on each side of the crossing. Nevertheless, in the face of these and other warnings, the plaintiff's decedent walked across the tracks and directly into the path of the train. Defendant's fireman had seen decedent as he approached the crossing but there was nothing in decedent's conduct to indicate that he did not see the train and see and hear the signals or that he would not stop or turn before coming into danger. This Court pointed out, in reversing a judgment for plaintiff:
"The evidence of the witnesses who testified as well as the undisputed evidence of the distance travelled by the train after the brakes were applied, establishes beyond any question of a doubt that the acts of the deceased, Mr. Rivers', as related herein rendered impotent and powerless the agents of the railroad operating the train to prevent the injury which resulted in Mr. Rivers' death. The fireman had the right, from the facts in the record here, to believe that the deceased was in possession of his faculties and his normal senses, and that with all of the signals of danger, the extent of which were almost overwhelming, he would not walk directly into the path of a moving train. When the fireman finally realized that the deceased was not going to stop and was not going to heed every danger signal possible to give, it was too late for any human agency to extricate the deceased from the situation that he placed himself in or prevent the death which so unfortunately occurred." (Emphasis supplied.)
But many cases present close fact situations not so easily solved. This is particularly true where both parties are in motion. In these instances it is often difficult to determine whether the conduct of a plaintiff was of a nature sufficient to put the motorist on notice of a situation of peril imminent to the plaintiff which the plaintiff was likely not to avert. And even where the conduct of plaintiff was sufficient to impart such notice, as in the examples above mentioned, it must further appear that the motorist had that notice at a time and under *578 circumstances when he thereafter had opportunity reasonably to avert the accident, otherwise the doctrine does not apply.
This latter situation is typical in the cases cited by appellee in support of his position. These cases are: Becker v. Blum, 142 Fla. 60, 194 So. 275; Yousko v. Vogt, Fla., 1953, 63 So.2d 193; Ward v. City Fuel Oil Co., 147 Fla. 320, 2 So.2d 586; Davis v. Cuesta, 146 Fla. 471, 1 So.2d 475; Miami Transit Company v. Goff, Fla., 1953, 66 So.2d 487. None is similar to the case at Bar.
In Becker v. Blum, supra [194 So. 276], a traffic light changed as the pedestrian plaintiff was crossing the street. He then stepped from in front of a waiting car and was hit by defendant who came from the right rear of the parked car to proceed through the light which was green to the defendant. The court said, "From the record it is apparent that there was no sufficient knowledge of the situation in time to act upon it, nor was there such opportunity to learn that the defendant is charged with knowledge."
In Yousko v. Vogt, supra, the defendant's car and the plaintiff on a scooter collided at an intersection where both had a clear view and neither saw the other until an instant before the accident. The court observed that neither party had a "last clear chance" to avoid the accident.
In Ward v. City Fuel Oil Co., supra, while defendant's truck proceeded northerly at a moderate speed, the plaintiff and another boy, each on horseback, galloped toward the highway. The leading boy crossed the road but plaintiff, as a result of attempting to stop or turn, went suddenly south along the highway toward the truck and ran into its side, although there was an area of 70 feet between the pavement and the fence in which the horse could have run.
Davis v. Cuesta, supra, involved a collision between cars of plaintiff and defendant which approached an intersection at right angles to each other, with a clear view to each driver, neither of whom reduced speed or sounded warning.
In each of the above four cases both the plaintiff and the defendant were in motion and the situation and conduct of the plaintiff was not sufficient to make it appear that he placed himself in a position of peril under circumstances sufficient to give the defendant notice thereof in time to act effectively. Therefore, in each of these cases a judgment for defendant was properly affirmed against a contention that the jury should have been instructed on the last clear chance doctrine.
Such, also, was the situation in Miami Transit Co. v. Goff, supra. In that case the front of plaintiff's car, traveling 20-28 miles per hour, struck the rear of defendant's 25 foot long bus at an intersection. The traffic signals were not working and the bus driver had proceeded into the intersection at about 10 miles per hour and did not see the plaintiff in time to get out of his way. A judgment for the plaintiff was reversed on the grounds that the facts failed to justify an instruction on the last clear chance.
This analysis brings us to the examination of the facts in the instant case. From the record here presented we wholly disagree with appellee's contention that the facts show that as a matter of law Reuben could not have averted the injury after he first saw appellant and realized, or should have realized, that he (appellant) was in danger and unlikely to extricate himself. When Reuben saw appellant he was in the roadway engaged in the operation of a transit. Under those circumstances Reuben at once should have realized that appellant was not likely to act to avert harm to himself. At that time, Reuben said, he was about 50 to 60 feet away and traveling 25 to 30 miles per hour. Yet thereafter this driver made no effort whatsoever to sound a warning, to reduce speed, or to stop or change his line of travel. Under these circumstances it cannot be said, as a matter of law, that during the ensuing period and distance traveled the driver had not the time *579 and means to avert injury. The question was one of fact for a jury to decide.
The necessity for this conclusion is particularly obvious because the record is devoid of any showing of excuse on the part of the driver for his failure to take any effort or precaution toward averting harm after he saw appellant preoccupied in his work in the street and did or should have realized his danger. Reuben's assertion that, after he saw appellant, a car passed on his right and then cut directly into his line of travel, is itself contradicted by the physical facts in that there is no explanation of why, if that event took place, the leading car did not strike the appellant. Moreover, such events could not possibly have taken place in the less than 1 1/2 seconds while Reuben traveled 50 to 60 feet or about three truck lengths. But, aside from any inconsistency in his testimony, Reuben's own version of the event shows that his conduct in continuing straight to a place where he knew plaintiff was standing and operating a transit, without reasonable explanation for the want of any real effort to reduce speed or to swerve or stop the truck, is conduct approaching that which may be characterized as a reckless disregard for the rights of others.
We hold that under the facts here presented the jury might have found that, when the driver saw appellant in a position of danger, the driver had the time and means to avert injury and negligently failed so to do. Therefore, it was error to fail to charge the jury on the last clear chance. Nor can it be said that the error was harmless. When the court below instructed the jury on contributory negligence, it in effect stated that, if plaintiff was negligent in going into and standing in the street and that this negligence contributed to the accident, a verdict must be for defendant, without regard to any subsequent conduct of the appellee's driver which itself may have been negligence proximately causing the accident. As stated in Williams v. Sauls, supra, "Under the charge as given the jury could and no doubt did conclude" that the plaintiff "negligently entered the road, and that such negligence contributed to his injury. The very claim of the benefit of this doctrine, however, is to admit a wrongful act in getting into a perilous position. If he is to remain bound by the original wrong, then he is deprived entirely of the benefit of relief for defendant's wrongful act which may be the immediate cause of the injury."
What is said here about the last clear chance is based upon that doctrine as applied to a situation where a defendant actually sees a person in a position of danger. Some jurisdictions confine the doctrine to cases where the defendant had knowledge of another's position of peril, 61 C.J.S., Motor Vehicles, § 493(3), p. 128, but this jurisdiction holds that the doctrine is applicable, under appropriate circumstances, where a defendant although he did not see plaintiff's peril could have done so in the exercise of reasonable care. Miller v. Unger, supra; Merchants' Transport Co. v. Daniel, supra.
The appellant has further urged that plaintiff should not have the benefit of the doctrine because he failed to place devices for warning the public of his presence in the street. However, because we have concluded that the knowledge of appellee's driver was sufficient under the facts to invoke the doctrine, it is unnecessary to consider matters of notice or want thereof of the presence of plaintiff in the highway.
Reversed with directions to grant appellant's motion for a new trial.
ROBERTS, C.J., and TERRELL, SEBRING and HOBSON, JJ., concur.
THOMAS and MATHEWS, JJ., agree to conclusion.