William Miles CAVITT, Appellant,

v.

Frank A. FERRIS, Jr., by Frank A. Ferris, Sr., as father and next friend, Appellee.

No. 17577.

United States Court of Appeals
Fifth Circuit.

Aug. 12, 1959.

Robert M. Montgomery, Jr., Jacksonville, Fla., Howell & Kirby, Jacksonville, Fla., of counsel, for appellant.

Nathan Bedell, Jacksonville, Fla., Bedell & Bedell, Jacksonville, Fla., of counsel, for appellees.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

About four o'clock on the morning of January 15, 1956, the appellee, Frank A. Ferris, Jr., a Marine private stationed at the Naval Air Station at Jacksonville, Florida, was walking south on Roosevelt Boulevard near Jacksonville. This Boulevard is a divided four-lane highway running south from Jacksonville and passes along the westerly boundary of the Naval Air Station at Jacksonville. While so walking, Ferris was struck from behind by an automobile driven by the appellant, William Miles Cavitt, a Lieutenant j. g. in the United States Navy, who was also stationed at the Naval Air Station at Jacksonville.

The accident occurred at about four o'clock on a Sunday morning. Ferris and his companion, John Loffredo, a fellow Marine, were returning to the base from an authorized liberty. Ferris' permission to park his automobile on the Air Station had expired. After parking the car in an area adjacent to Roosevelt Boulevard about one-half mile north of the Main Gate of the Air Station, Ferris and Loffredo started on foot toward the entrance to the base.

The accident occurred 600 yards north of the Main Gate of the Air Station. At that point Roosevelt Boulevard is straight and level for a distance of one-half mile. The north and south bound lanes are each twenty-two feet wide and are separated by a grassy area ten feet wide. The grassy area slopes toward the center. There had been rain and the center area was mushy and soft. The Air Station is located on the east side of Roosevelt Boulevard and a concrete sidewalk runs parallel to the fence along the western boundary of the Air Station property. The walk was lighted by lights similar to street lights. There were no other lights along the Boulevard. An investigating officer testified that at the time of the accident the sidewalk was torn up and filled with water at spots and that it was seldom used.

Ferris was walking on the easterly edge of the south bound lane and Loffredo was walking on the edge of the grass to Ferris' left. Both men were dressed in green-hued olive drab uniforms and dark shoes and socks. Ferris testified that he was alert and wide awake and that when a car would pass them going south they would move over closer to the edge of the highway. Ferris stated that when he first noticed the appellant's automobile it was about 200 yards north of him and in the west lane. He said he looked back again and saw the car still in the west lane and about

100 yards away. Assuming that the driver had seen them and would have plenty of room to pass, he continued to walk along the edge of the pavement. Immediately thereafter Ferris was struck from the rear and received serious injuries which hospitalized him for a period of eight months. Loffredo was not injured. Ferris testified that at no time was he aware that he was about to be struck by the car.

Lieutenant Cavitt testified that he was also returning to the base and that he was not aware of any drowsiness and was in full control of his faculties. His windshield was clear and his headlights were in good working order. He stated that the traffic was light and that he was driving around thirty to thirty-five miles an hour. He testified that shortly before the accident he had moved from the west lane to the east lane in order to pass a slow moving vehicle, and, intending to make a left turn into the Air Station, he remained in that lane. Lieutenant Cavitt stated that he did not see Ferris until he was about twenty feet from him and that Ferris, "appeared to come up over the fender of my car when I saw him, directly in front of the fender slightly to the left of center of my automobile."

The appellee, Ferris, subsequently brought this action in the United States District Court for the Southern District of Florida alleging that the appellant was negligent in the operation of his automobile and seeking damages for the injuries which he had sustained. The case was tried to a jury which returned a verdict of $20,000 for the appellee, Ferris. The District Court overruled the appellant's motions for a directed verdict, judgment notwithstanding the verdict and for a new trial. Judgment was entered on the verdict. This appeal followed.

The appellant specifies four errors for our consideration. The first, second and fourth relate to the court's charge to the jury on the doctrine of "last clear chance". In that portion of its charge the court instructed the jury that if they found the appellee to be "negligent in exposing himself to danger and thereafter was either unaware of the impending danger or was unable to extricate himself from his perilous position by the exercise of reasonable care", and that after the appellee had so exposed himself to danger, the appellant could have avoided the injury "by keeping his automobile in proper control and by keeping a proper lookout ahead but that he failed to use proper and ordinary care and his failure in this respect was the direct cause of the injuries," then they should find for the appellee. The court further instructed the jury that the doctrine also applied to the appellee and that if they found that Ferris "knew or in the exercise of reasonable care for his own safety should have known that he was in a position of peril and he had the last clear chance to avoid being run down by Mr. Cavitt's automobile, then he should have availed himself of this chance and gotten to a position of safety."

The appellant asserts that the evidence did not warrant the court's instructing the jury on this doctrine and that the court should have granted his motions for a directed verdict or judgment notwithstanding the verdict, or, in the alternative, to have granted a new trial. To sustain his position the appellant directs our attention to Merchants' Transportation Co. v. Daniel, 109 Fla. 496, 149 So. 401; Falnes v. Kaplan, Fla., 101 So.2d 377, and Edwards v. Donaldson, Fla.App., 103 So.2d 256.

The leading case on "last clear chance" in Florida is Merchants' Transportation Co. v. Daniel, supra [109 Fla. 496, 149 So. 403]. There the Supreme Court of Florida set forth two situations in which the doctrine is to be applied: "(1) Assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, whenever the person in control of a motor vehicle actually sees his situation and should appreciate his danger, the last clear chance rule applies without regard to the continuing negligence of the traveler concurring with that of the operator up to

the very instant of the injury; (2) Where the person in control of a motor vehicle, by keeping a reasonably careful lookout, commensurate with the dangerous character of the motor vehicle while in operation and the nature of the locality, could have discovered and appreciated another's perilous situation in time by the exercise of reasonable care to avoid injuring him, and the injury results from the failure to keep such lookout and to exercise such care, then the last clear chance rule applies, regardless of the injured person's prior negligence whenever that negligence has terminated, or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him."

It is clear that in Florida the doctrine of last clear chance may apply even though the defendant has no actual knowledge of the plaintiff's position of peril if, by the exercise of due care, he should have known of the peril in time to have avoided the accident. Wawner v. Sellic Stone Studio, Fla., 74 So.2d 574; Springer v. Morris, Fla., 74 So.2d 781. But, as the Daniel case shows, this rule does not apply unless the plaintiff's negligence has "terminated, or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him." [109 Fla. 496, 149 So. 403]. There was evidence that the appellant did not see the appellee until it was too late to avoid hitting him. There is no evidence and no contention of the appellee to the contrary.

The rule as stated was applied in the two recent Florida cases cited by the appellant. The facts of these two cases are very similar to those in this case. In Falnes v. Kaplan, Fla.1958, 101 So.2d 377, the plaintiff and a companion were walking south on the sidewalk in a residential section of Coral Gables, Florida. When the walkway became broken and uneven the plaintiff began walking in the street about three feet from the right-hand curb and his companion was walk-

ing to his right on the grass which separated the street from the sidewalk. They were wearing dark clothing and the street was not well lighted. The defendant's car approached the pedestrians from the rear at thirty miles per hour, but the driver did not see the plaintiff until he was about ten feet away and it was too late to avoid the accident. The court refused to charge the jury on the doctrine of "last clear chance" and the jury returned a verdict for the defendant. The plaintiff appealed. The Supreme Court of Florida, relying exclusively on the Daniel case, held that the plaintiff "had not been put in any position of danger from which he could not extricate himself and his negligence had not ceased. To terminate his own negligence he had but to step aside when he became aware of the approaching vehicle and he should have been prepared to do that because he knew he was in a place where motorcars were likely to pass. And, of course, it is plain that he was not prevented from ending his negligence because of inability to deliver himself from a position of danger. * * * Applying the prime elements of the doctrine, as they are set out in the cited cases, to the conduct of [the plaintiff], himself, we conclude that he was not entitled to the charge * * *." [101 So. 2d 380.]

In Edwards v. Donaldson, Fla.App., 103 So.2d 256, 259, the facts were substantially the same and the District Court of Appeals of Florida for the Second District affirmed the trial court's refusal to instruct the jury on last clear chance. The court stated, "In applying the doctrine of last clear chance to a set of facts we much concern ourselves initially with the premise that in order to invoke such a doctrine it is necessary that there must be competent substantial evidence clearly indicating that the prior negligence of the plaintiff in placing himself in a perilous position had terminated or culminated and from which the exercise of ordinary care on his part would not thereafter extricate him."

A similar admonition was made by the Supreme Court of Florida in Yousko v. Vogt, Fla.1953, 63 So.2d 193, 194, in this language, "A trial judge when faced with a request for a charge upon the doctrine of the 'last clear chance' should be extremely cautious. Such a charge should never be given unless the evidence clearly demonstrates its applicability. If this be not true, the giving of such a charge would either work an advantage to the plaintiff to which he would not be entitled or at least would tend to confuse, rather than aid, the jury in the performance of its duty."

The slight factual differences between the Falnes and Edwards cases and the case before us are not such as relate to the plaintiff's ability to have extricated himself from his position of peril. We need not and do not hold that the appellee, Ferris, was contributorily negligent as a matter of law in walking on the pavement or in failing to keep a proper lookout. It is enough that any conduct of Ferris which was proximately related to the accident and which the jury might find to be negligence continued in an unbroken sequence until he was struck. Therefore, under the law as stated in Merchants' Transportation Co. v. Daniel and the Falnes and Edwards cases, supra, the appellee was not entitled to a charge on "last clear chance".

We can not agree with the appellant that, absent the application of the doctrine of last clear chance, the evidence was such as to entitle him to a directed verdict. Nor do we think there is any merit to the appellant's third specification of error complaining of the District Court's refusal to submit certain requested charges. The substance of these charges was covered by other instructions given by the court.

Concluding as we do that the court erred in instructing the jury on the doctrine of last clear chance, the judgment for the appellee is reversed and the case remanded for further proceedings not inconsistent herewith.

Reversed and remanded.