74 So.2d 781 (1954)
SPRINGER et al.
v.
MORRIS.
Supreme Court of Florida. Special Division B.
August 31, 1954.
Rehearing Denied October 18, 1954.
*783 Ellis & Spencer, Hollywood, Brown, Dean & Hill, Walton, Hubbard, Schroeder, Lantaff & Atkins, C. Clyde Atkins, Miami, for appellants.
Fleming, O'Bryan & Fleming, Fort Lauderdale, Charles Danton, Miami Beach, for appellee.
SEBRING, Justice.
Pearl Morrell Morris was struck by an automobile and seriously injured while attempting, in the nighttime, to cross Hollywood Boulevard, in Hollywood, Florida. She sued to recover damages against the owner of the automobile and the driver who was operating the vehicle with the knowledge and consent of the owner. The defendants denied the negligence alleged in the complaint and pleaded contributory negligence on the part of the plaintiff. The jury returned a verdict in favor of the plaintiff, and the defendants appealed.
The errors assigned by the defendants relate to the denial of their several motions for a mistrial because of certain questions relating to insurance that were propounded to the prospective jurors by plaintiff's counsel on voir dire examination; the denial of the defendants' motion for a directed verdict; the impropriety, under the facts, of the trial court's charging the jury on the doctrine of last clear chance; the denial of an extraordinary motion for new trial on the ground of newly discovered evidence to the effect that the plaintiff was grossly intoxicated when the accident occurred; and the excessiveness of the verdict.
As to the alleged error with reference to the issue of insurance, the record reflects that during the course of the voir dire examination, the plaintiff's counsel, after first securing permission of the trial court, asked several of the prospective jurors the following question: "Are you an agent, employee, officer, or stockholder or otherwise interested in any insurance corporation?" When negative answers were given, no further questions in this connection were propounded. We have the opinion that the procedure followed by plaintiff's counsel in examining the prospective jurors was well within the permissible limits of examination approved in Ryan v. Noble, 95 Fla. 830, 116 So. 766; and that the trial court should not be held in error for refusing to declare a mistrial on the ground asserted.
We find no error in the order of the trial court refusing to grant the motions of the defendants for a directed verdict in their favor at the close of the plaintiff's case and after the submission of all the evidence. The evidence on the issue of negligence and contributory negligence was in direct and hopeless conflict. Under these circumstances a factual issue was presented for decision by the jury under appropriate charges from the court. Kidd v. Cox, Fla., 40 So.2d 454; Brandt v. Dodd, 150 Fla. 635, 8 So.2d 471; Williams v. Sauls, 151 Fla. 270, 9 So.2d 369; King v. Griner, Fla., 60 So.2d 177.
In respect to the assignment of error relating to the charges given by the trial court on the doctrine of last clear chance, the record reveals that in charging the jury the trial court, of its own motion, gave the general charge in usual form applicable to the issues arising out of a negligence action. The trial court also gave additional charges requested by the plaintiff and defendants, respectively, with reference to the law of contributory negligence; proximate cause; last clear chance; the law in respect to permissible speed of motor vehicles on the boulevard, and the effect of its violation; the duty of a driver to maintain headlights of specified intensity; and the duty of a pedestrian to maintain proper lookout and to yield the right of way to oncoming vehicles when crossing a street other than at an intersection.
It is contended that the charge on the doctrine of last clear chance was erroneous because (1) the evidence did not warrant the giving of the charge, and (2) the charge was an incorrect statement of the law relating to the doctrine in that it was bottomed upon the proposition that if the *784 driver saw or should have seen the plaintiff in time to have avoided the accident had he been looking in the direction he was required to look in the safe operation of his motor vehicle and thus could have avoided the collision, a verdict in favor of the plaintiff would be proper.
In respect to this assignment of error, there is evidence in the record that the street on which the accident occurred is the principal east-west thoroughfare in Hollywood, Florida, and that both the paved surface and the adjacent terrain "are as flat as the palm of one's hand." There are no central parkways, overhanging trees, curves or other impediments to view. A person standing on the bridge over the Intra-Coastal Canal at the easterly end of the boulevard can see plainly the Park View Hotel, situated at the westerly end, more than a mile away.
The plaintiff attempted to cross from the north side to the south side of Hollywood Boulevard between 10:30 and 11 o'clock in the nighttime. She made this attempt in approximately the middle of the block in a residential section, at which point the street is 120 feet wide and entirely straight and level for seven and one-half blocks to the east  the direction from which the defendants' car was coming. It was well enough lighted that a person driving along the street "could have seen a pedestrian out in the middle of the street by the street light [alone]."
Just before the plaintiff started across the boulevard from north to south she looked to her left and right and saw no vehicles approaching from either direction. After she had gotten onto the street she continued looking but "didn't see any cars or any car lights. If they were there they must have been a terrible way off." She had no knowledge or awareness of the presence of the car being driven westward by the defendant until just before it struck her, at which time the lights of the car flashed into her range of vision and she was run down before she could get out of the path of the oncoming vehicle.
The evidence shows that at the time the plaintiff was struck the car was traveling slightly in excess of the speed allowed by ordinance. The accident occurred at approximately the center line of the highway. Heavy skid marks began about 16 feet from where the plaintiff was struck. At the end of the heavy skid marks the skid marks became dim and barely visible for 37 feet, at which point the heavy skid marks began again and continued for another 16 feet. After the automobile came to a stop the body of the plaintiff was found lying to the north of the right fender. There is also evidence that a few days after the accident occurred the driver of the car, in his attempt to explain the reason for the accident, told the plaintiff's sister that he "turned around to talk to the fellows in the back seat * * * all I know is when I looked around I hit her."
Opposed to this evidence is the evidence offered by the defendants' witnesses to the effect that when the driver of the car left the Hollywood Beach Hotel, more than a mile away, the lights of the car were burning; that the street was not well lighted; that he kept a vigilant lookout as he drove along in a westerly direction; that he first saw the plaintiff walking across the highway from south to north and that as she passed in front of his approaching car to the north of his line of travel she suddenly turned back and walked directly into the side of the vehicle. There is also evidence from witnesses for the defendants that when the plaintiff was taken to the hospital they smelled the odor of alcohol on and about her person  although the driver of the car stated unequivocally that he did not smell the odor of alcohol.
We have the view that under the conflicting evidence before the jury a charge on the doctrine of last clear chance was proper. "Where the person in control of a motor vehicle, by keeping a reasonably careful lookout, commensurate with the dangerous character of the motor vehicle while in operation and the nature of the locality, could have discovered and appreciated another's perilous situation in time by *785 the exercise of reasonable care to avoid injuring him, and the injury results from the failure to keep such lookout and to exercise such care, then the last clear chance rule applies." Merchants' Tranportation Co. v. Daniel, 109 Fla. 496, 149 So. 401, 403. (Italics supplied.)
"The prime foundation of liability in negligence cases is knowledge  or what is deemed to be in law the same thing, opportunity by the exercise of reasonable diligence to acquire knowledge of the peril which subsequently results in injury. Fault on the part of the defendant is to be found in his action or nonaction accompanied by knowledge, actual or implied, of the probable results of his conduct contemporaneous with the infliction of injury; and, likewise, the contributory negligence or fault of the plaintiff that will bar his recovery is to be determined by the same test. The latter is so, because no liability is predicable on an injury when it appears that the injured person's knowledge, actual or implied, of the danger causing it surpassed or equaled that of the defendant when the peril arose. Taylor v. Home Telephone Co., 163 Mich. 458, 128 N.W. 728, 31 L.R.A.,N.S., 385. The `last clear chance' rule is founded upon the actual or implied knowledge of the defendant in cases where he attempts to set up alleged negligent conduct of plaintiff as a bar to the cause of action under a plea of contributory negligence." Lindsay v. Thomas, 128 Fla. 293, 174 So. 418, 420. (Italics supplied.) See also Wawner v. Sellic Stone Studio, Fla., 74 So.2d 574; Ward v. City Fuel Oil Co., 147 Fla. 320, 2 So.2d 586.
Another assignment of error urged by the defendants is predicated on the order of the trial judge denying the motion for new trial on the ground of newly discovered evidence. By this evidence defendants attempt to show that at the time of the accident plaintiff was highly intoxicated and consequently could not have been in command of her normal senses. The trial judge denied the motion after considering affidavits and counter-affidavits, and testimony on the issue, on the grounds (1) that the defendants "failed to exercise due diligence to discover [the] evidence," (2) that the "newly discovered" evidence was cumulative; and (3) that the witnesses from whom such "newly discovered" evidence would be forthcoming were not credible witnesses.
We find no error in this ruling.
"Applications for new trial upon the ground of newly-discovered evidence are looked upon by the courts with distrust and disfavor, and are granted only under the following restrictions: (1) The evidence must have been discovered since the former trial; (2) the party must have used due diligence to procure it on the former trial; (3) it must be material to the issue; (4) it must go to the merits of the cause, and not merely to impeach the character of the witness; (5) it must not be merely cumulative; (6) it must be such as ought to produce on another trial an opposite result on the merits." Howard v. State, 36 Fla. 21, 17 So. 84, 85.
The motion was deficient in at least three of the requirements enumerated above and consequently should have been denied.
The final contention of the defendant is that the verdict was so excessive as to have been influenced by improper elements.
According to evidence that the jury had the right to believe, the plaintiff's injuries were, in summary, a severe cerebral concussion, fractured pelvis, compound fracture of the right leg, severe comminuted fracture of the left leg, a bladder injury, injured shoulder, and other lacerations and contusions over her body.
The head injury resulted in prolonged unconsciousness, and the plaintiff's condition for many months was such as to require constant attendance by one or more persons. Aside from the pain and suffering which necessarily accompanied the injuries themselves and which could be relieved only to a limited extent by administration of narcotics, the course of treatment required *786 suspension of plaintiff's limbs in traction apparatus over a long period of time. On one occasion convulsions caused her to pull the traction pins through her heel bones. Two open bone grafting operations were performed, each leg being reinforced by bone which was removed from each hip for the purpose. Casts were not removed, even temporarily, for more than eight months, and it was approximately one year after the accident before the plaintiff could lift her legs or touch her feet to the floor without great pain.
The medical testimony is that plaintiff's permanent disability is such that she should never work again at her former occupation as waitress, or engage in any demanding physical activities; that she may expect chronic pain or discomfort throughout life; that she would not be discharged as a patient for four or five years; and that future surgery may be required to remove plates from her legs.
At the time of the trial plaintiff could walk only with the aid of crutches. The testimony was that this was a difficult and painful procedure for her; that she has been in constant pain and has incessant headaches, menstrual trouble, and difficulty in sleeping; that she still cannot dress herself; and that she suffers post-concussion symptoms, including spots in one eye, increased nervousness, lessened mental agility, depression and personality changes.
A computation of out of pocket expense, estimated future medical costs, loss of wages during total disability, and a conservative estimate of the decreased earning ability of plaintiff, a divorced woman in her early 30's, will account for more than half of the verdict of $75,000 damages rendered in this cause. The balance attributable to pain and suffering is not, in our opinion, such as to make it patently appear to have been awarded as the result of improper influences. "The question of liability and the amount of the [verdict] were fairly submitted to the jury. They saw the parties, heard the evidence, observed their demeanor on the witness stand * * *. The Circuit Judge had the same opportunity to hear and observe the witnesses * * *. On motion for new trial [he] put the stamp of his approval upon the verdicts." Miami Transit Co. v. Scott, Fla., 58 So.2d 542, 545; Florida Greyhound Lines v. Jones, Fla., 60 So.2d 396; Frankel v. Fleming, Fla., 69 So.2d 887.
We hold that the judgment appealed from should be affirmed.
It is so ordered.
ROBERTS, C.J., and HOBSON, J., and PATTERSON, Associate Justice, concur.