101 So.2d 377 (1958)
Jan Einar FALNES, by his next friend, Arne Skagseth, Appellant,
v.
A.N. KAPLAN, Jr., Terryce S. Kaplan, and Harry S. Kaplan, as co-partners, trading and doing business as Parisian Cleaners & Dyers, a partnership, Appellees.
Supreme Court of Florida.
January 31, 1958.
Rehearing Denied April 9, 1958.
*378 Nichols, Gaither, Green, Frates & Beckham and Sam Daniels, Miami, for appellant.
Wicker & Smith and Harry G. Hinckley, Jr., Miami, for appellees.
THOMAS, Justice.
Granada Boulevard in Coral Gables, at the point where Jan Einar Falnes was struck by a car belonging to the appellees and driven by one of them, is paved with a black asphalt surface. Sidewalks extend along each side and the spaces between the sidewalks and the roadway are planted in grass. The vicinity is occupied by residences so the parkway is not very brightly illuminated.
Jan Einar Falnes and his companion, Arnfinn Taalesen, were cadets in the Norwegian Air Force and were, at the time, clothed in the dark blue uniform of that outfit. Shortly before midnight, the men were going south along the sidewalk on the west side of the boulevard when they came to some places in the walk that were broken and uneven. They continued their course by walking along the edge of the grassy strip next to the pavement.
According to the version the jury evidently accepted, Taalesen, at the time of the mishap, was proceeding on the strip and Falnes about three feet from it in the street.
The car approached the pedestrians from the rear at the approximate rate of 30 miles an hour, and the driver did not see Falnes until he was ten feet, or, at that speed, less than a fourth of a second, away when he swerved to the left in an attempt to avoid striking Falnes, but it was too late.
A Jury returned a verdict for the defendants and this appeal was taken from the judgment. The only question presented here is whether or not the trial judge erred when he declined, in the circumstances we have related, to charge the jury on the doctrine of last clear chance.
It is argued that even if the driver did not see Falnes until he was but ten feet distant the charge should have been given if the driver should have known of Falnes' peril. For support of this position we are referred to our opinion in Merchants' Transportation Co. v. Daniel, 109 Fla. 496, 149 So. 401, 403, that when "the person in control of a motor vehicle, by keeping a reasonably careful lookout, commensurate with the dangerous character of the motor vehicle while in operation and the nature of the locality, could have discovered and appreciated another's perilous situation in time by the exercise of reasonable care to avoid injuring him, and the injury results from the failure to keep such lookout and to exercise such care, then the last clear chance rule applies * * *." We quoted *379 this language in Springer v. Morris, Fla., 74 So.2d 781.
Of course, the pedestrian was negligent when he chose to walk on the pavement while there was abundant space to walk elsewhere. His danger was intensified by the fact that, in the nighttime, the color of his uniform blended to a considerable degree with the color of the asphalt surface of the street. Also, he was doubtless aware of the approach of a vehicle from behind because of the light shed around him.
The right of a plaintiff to have a charge given to the jury on the matter of last clear chance cannot be defeated alone by evidence of his negligence however clear it may be, even though there may be a temptation to conclude that he took such poor care of himself he should suffer the consequences. Earnest consideration must be given to the conduct of the defendant despite negligence on the part of the plaintiff. Were we to base a ruling solely on the quoted language, it would appear that if the driver of defendants' car could have perceived the plaintiff's danger in time to prevent striking him, and the injury resulted from the driver's "failure to keep such lookout" the jury should have been charged to that effect. The plaintiff, now appellant, argues that the jurors should have been given the opportunity to determine whether or not the driver was giving proper attention to the operation of the vehicle when he did not see directly in his path an object the size of a man until he was only ten feet away. But our problem may not be so easily decided.
The doctrine of last clear chance was very simple in its origin and was devised to prevent miscarriage of justice by the harsh rule that one who by his negligence contributed to his own hurt could not in any circumstances recover. In Davies v. Mann, 10 M. & W. 546, 152 Eng.Rep. 588, decided in 1842, often cited as the controversy in which the doctrine originated, is found the statement: "The principle of law, as deducible from the cases, is, that where an accident is the result of faults on both sides, neither party can maintain an action." The court then held that the judge correctly charged the jury that the mere negligence of plaintiff's placing his donkey on the highway was not an answer to a claim for death of the animal caused when the defendant's servant struck it with a wagon and horses while driving at a "smartish pace." Although, said the court, the donkey may have ben wrongfully on the road, the driver of the horses still was bound to proceed at a rate that would not cause mischief.
In the development of the doctrine by the courts of this country there has been much elaboration of it and there is no purpose in this case further to labor the principle. Certainly such a charge is not to be considered a stereotyped or conventional one to be given generally in actions arising from the operation of automobiles. On occasions we have held that the trial court committed error in giving the charge, Ippolito v. Brenner, Fla., 72 So.2d 802; that the court did not err in refusing the charge, Yousko v. Vogt, Fla., 63 So.2d 193; and that the court erred in rejecting the charge, Miller v. Ungar, 149 Fla. 79, 5 So.2d 598. We have also held that such a charge should not be given "unless the evidence clearly demonstrates its applicability." Yousko v. Vogt, supra [63 So.2d 194].
Although certain elements necessary to the applicability of the doctrine have been defined, our re-examination of decisions on the subject confirms the view that no definite rule can be stated with reference to factual situations in which the charge should or should not be given, but that each case must be its own criterion. And the decision, of course, is one initially to be made by the trial judge. The appellant requested several charges relative to the doctrine and all were rejected. Rule 2.6 (b), 1954 Rules of Civil Procedure, 31 F.S.A.
*380 We are always reluctant to interfere with the ruling of a judge when he decides what charges he should give to advise the jury of the law of the case as he is required to do by Sec. 54.17, Florida Statutes 1953, and F.S.A., after the conference held pursuant to the above rule, and in this controversy the appellant has not convinced us we should upset the judge's decision that the charges should not have been given.
In the beginning we quoted from Merchants' Transportation Co. v. Daniel, supra, language that was quoted in Springer v. Morris, supra, and copied by appellant in his brief. From this statement it appeared to us at first that the appropriateness of the charge of last clear chance could not be judged by what occurred in the short space of ten feet and the short period of a fraction of a second when both vehicle and pedestrian had for an appreciable time been travelling the same course and Falnes and his companion were walking side by side, although Falnes alone was on the pavement. The situation was not the same as if Falnes had stepped into the street when the car was but ten feet away. And it seemed to us from the language chosen that the facts justified submission to the jury of the question whether or not the driver of the car could have, before coming so close to Falnes, discovered Falnes' presence and by exercise of reasonable care avoided striking him.
However, a close study of that part of the opinion in Merchants' Transportation Co. v. Daniel, supra, immediately following the portion quoted has lead us to a contrary ruling. It reads that the rule is appropriate "regardless of the injured person's prior negligence whenever that negligence has terminated, or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him." (Italics supplied.) The Court added: "This latter phase of the rule applies whenever injury results from new negligence, or from a continuance of the operator's negligence after that of the injured party has so ceased or culminated." (Italics supplied.)
From our exploration of the authorities we think the most typical illustration of these elements is described in Bullock v. Wilmington & W.R. Co., 105 N.C. 180, 10 S.E. 988. A portable steam engine drawn by oxen became stalled on a railroad crossing and about the time it became obvious to the operator that he could not remove it, a train came into sight. He advanced toward the train and undertook to signal the engineer so that his predicament would be discovered and the train stopped before it reached the crossing. Despite his efforts the engineer, who admitted that he saw the obstruction on the crossing as his train rounded a curve and that he saw the signals in time to stop the train and avoid a collision, nevertheless applied the brakes too late and the portable steam engine was destroyed. The new negligence arose when the engineer became conscious of the obstruction and the effort to flag the train yet continued his speed. The original negligence of the plaintiff seems to have consisted of attempting to go over a crossing which by the nature of its construction would not permit passage of the steam engine drawn by the oxen and in making the attempt about the time he knew a train was due. The court cited Davies v. Mann, supra.
We wonder what new negligence was committed by the appellee-driver, or what primary negligence was committed by him. He was proceeding along that part of the parkway provided for vehicular traffic. There was no reason to believe that pedestrians would choose to walk in the street when ample accommodations for them were provided on both sides of the boulevard. Falnes had not been put in any position of danger from which he could not extricate himself and his negligence had not ceased. To terminate his own negligence he had but to step aside when he became aware of the approaching vehicle and he should have been *381 prepared to do that because he knew he was in a place where motorcars were likely to pass. And, of course, it is plain that he was not prevented from ending his negligence because of inability to deliver himself from a position of danger.
It would, in our opinion, be unjust to hold that a motorist should expect a pedestrian to be strolling where he had no right to stroll and then be held responsible for damages if a jury should decide that had the motorist been on the lookout for what there was no reason to anticipate he would have had the last clear chance to avoid injury.
There is no disposition on the part of this court to tamper with the decisions in the cases of Wawner v. Sellic Stone Studio, Fla., 74 So.2d 574, or Springer v. Morris, supra, with reference to the application of the rule of last clear chance when it is shown that the defendant-operator of a motorcar saw the plaintiff in a position of peril, or, had he been alert, could have discovered the plaintiff's perilous position.
In the former, the plaintiff, a surveyor, was in plain view and was looking through a transit; in the latter there was evidence that the defendant-driver was not on the alert but to the contrary was talking to companions in the rear of the car at the time of the mishap. We held in the first case that it was error not to give the charge on last clear chance, in the second case that it was not error to give it.
In the instant controversy the appellee-driver was shown to have been travelling alone at a moderate speed, and there was no positive testimony of inattentiveness on his part. These circumstances combined with the ones we have already related did not, in our opinion, present a situation from which it could have been deduced that the driver was so heedless that the court was obliged to charge the jury on the doctrine.
Applying the prime elements of the doctrine, as they are set out in the cited cases, to the conduct of Falnes, himself, we conclude that he was not entitled to the charge so the judgment is
Affirmed.
TERRELL, C.J., and ROBERTS, THORNAL and O'CONNELL, JJ., concur.