103 So.2d 256 (1958)
Leslie EDWARDS, Appellant,
v.
Hubert F. DONALDSON, Appellee.
No. 262.
District Court of Appeal of Florida. Second District.
May 23, 1958.
*257 Spencer C. Cross, Ocoee, and Maguire, Voorhis & Wells, Orlando, for appellant.
Gurney, McDonald & Handley, Orlando, for appellee.
BARKER, ROGER A., Associate Judge.
The parties will be referred to as they appeared in the Court below.
On the evening of December 24, 1954, the plaintiff, while walking north on Dillard Street in Winter Garden, Florida, was struck by the defendant's vehicle. The evidence disclosed that prior to the accident as plaintiff walked northerly on the pavement of Dillard Street, he was about ten to twelve inches west of the eastern edge of the pavement. The area was unlighted, and for several thousand feet only one or two houses abutted the road, the remainder being occupied by pastures, fields, or unimproved land. Dillard Street connected State Road 50 and the populated area of Winter Garden. It was heavily traveled by vehicular traffic and very lightly traveled by pedestrians. The plaintiff was dressed in dark clothing. There were no sidewalks provided for pedestrians. There was evidence that plaintiff had been drinking prior to the accident.
The vehicle of defendant approached plaintiff from the rear traveling at a rate of speed between 25 and 40 miles per hour. The defendant did not see the plaintiff until the vehicle was not over 50 or 60 feet from him. Immediately upon seeing plaintiff the defendant applied his brakes and cut his truck as hard as he could to the left. The truck went into a skid thereby causing the right front door of the truck to strike plaintiff. The evidence is in conflict as to the position of the plaintiff at the time the defendant first saw him. The plaintiff testified he was about ten or twelve inches from the eastern edge of the pavement. The defendant testified plaintiff was five or six feet from the eastern edge of the pavement. The paved portion of Dillard Street was 24 feet wide at the point of collision. At no time did the truck leave the paved road.
The evidence discloses that as defendant drove north on Dillard Street another vehicle was approaching south on the same street approximately two-tenths of a mile away with its headlights lighted. The defendant's headlights were on low beam and had been so since entering upon Dillard Street.
A city ordinance provided a speed limit of 20 miles per hour at the place of the collision.
Plaintiff testified as follows:
"Q. Did you see the lights of the car as you walked up the road? A. *258 I noticed lights in front of me from behind.
"Q. What did you do? A. It shined so bright until I turned left to see how far behind it was and he was so close to me he hit me before I could get off the pavement.
"Q. Did you turn around when you first thought there was an automobile behind you? A. It was just that a-way. When I first noticed it was right at me, and when I first saw the lights in front of me, and I could have played marbles in front of me the flash was so bright, and before I could get off he struck me in the back."
The jury returned a verdict for the defendant and this appeal is taken from the judgment. The only question presented here is whether or not the trial judge erred when he declined, in the circumstances above related, to charge the jury as follows:
"You are instructed that even if you should find that plaintiff was negligent in walking where he did on the street, but that after the plaintiff had so exposed himself to danger, the defendant could have avoided striking the plaintiff by using ordinary care in keeping his automobile under proper control and by keeping a proper lookout ahead or by driving his truck within range of his vision, and that the defendant failed to use such ordinary care and that his failure in this respect was the direct cause of injury to the plaintiff, then you should return a verdict for the plaintiff."
The appellant argues that there was competent, substantial evidence in the record to support a charge on the last clear chance doctrine and that it was harmful error and an injustice to the plaintiff-appellant for the trial Court to refuse to give the above requested charge.
We have made an exhaustive study of the origin of the doctrine of last clear chance and the opinions dealing with such doctrine. We are in complete agreement with the Supreme Court in the opinion of Justice Thomas in the case of Falnes v. Kaplin, Fla. 1958, 101 So.2d 377, 379, wherein it is stated:
"Although certain elements necessary to the applicability of the doctrine have been defined, our re-examination of the decisions on the subject confirms the view that no definite rule can be stated with reference to factual situations in which the charge should or should not be given, but that each case must be its own criterion. And the decision, of course, is one initially to be made by the trial judge."
The facts in the Falnes v. Kaplan, cited above were:
"Granada Boulevard in Coral Gables, at the point where Jan Einar Falnes was struck by a car belonging to the appellees and driven by one of them, is paved with a black asphalt surface. Sidewalks extend along each side and the spaces between the sidewalks and the roadway are planted in grass. The vicinity is occupied by residences so the parkway is not very brightly illuminated.
"Jan Einar Falnes and his companion, Arnfinn Taalesen, were cadets in the Norwegian Air Force and were, at the time, clothed in the dark blue uniform of that outfit. Shortly before midnight, the men were going south along the sidewalk on the west side of the boulevard when they came to some places in the walk that were broken and uneven. They continued their course by walking along the edge of the grassy strip next to the pavement.
"According to the version the jury evidently accepted, Taalesen, at the time of the mishap, was proceeding on *259 the strip and Falnes about three feet from it in the street.
"The car approached the pedestrians from the rear at the approximate rate of 30 miles an hour, and the driver did not see Falnes until he was ten feet, or, at that speed, less than a fourth of a second, away when he swerved to the left in an attempt to avoid striking Falnes, but it was too late.
"A jury returned a vedict for the defendants and this appeal was taken from the judgment. The only question presented here is whether or not the trial judge erred when he declined, in the circumstances we have related, to charge the jury on the doctrine of last clear chance."
Our Supreme Court held that the plaintiff was not entitled to the charge on the doctrine of last clear chance based upon the foregoing facts.
In the instant case the facts are quite similar in all respects save two, namely, there were no sidewalks provided for pedestrian travel and the driver first saw the pedestrian a distance between 40 and 50 feet away rather than ten feet away.
Plaintiff's argument is that even if he were negligent still the defendant had the last clear chance to avoid the collision by the use of due care; or, in other words, that the defendant's negligence (1), in not observing the plaintiff in time to avoid striking him; (2), in driving beyond the range of his vision; (3), in exceeding the speed limit fixed by ordinance; and (4), in failing to avoid striking the plaintiff after the defendant first saw plaintiff some 50 or 60 feet away, was the immediate cause of the collision, relegating the plaintiff's negligence to the position of a remote cause, rather than a proximate cause.
In the recent case of Parker v. Perfection Cooperative Dairies, 1958, 102 So.2d 645, 647, this Court, in discussing the doctrine of last clear chance, laid down the conditions under which the doctrine applies as follows:
"`(1) That the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact, but also that the party in peril either reasonably cannot escape from it, or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care'"
A motorist must exercise ordinary, reasonable and due care toward a pedestrian. Greiper v. Coburn, 139 Fla. 293, 190 So. 902; Baston v. Shelton, 152 Fla. 879, 13 So.2d 453.
The rights of motorists and pedestrians on highways are reciprocal, and neither have a paramount right over the other. King v. Griner, Fla., 60 So.2d 177; Robb v. Pike, 119 Fla. 833, 161 So. 732; Florida Motor Transport Co. v. Hillman, 87 Fla. 512, 101 So. 31; Greiper v. Coburn, 139 Fla. 293, 190 So. 902; Brandt v. Dodd, 150 Fla. 635, 8 So.2d 471.
A pedestrian has a right to be on a public highway, but he is under a duty to protect himself and to avoid injury by approaching automobiles. Clair v. Meriwether, 127 Fla. 841, 174 So. 591.
In applying the doctrine of last clear chance to a set of facts we much concern ourselves initially with the premise that in order to invoke such a doctrine it is necessary that there must be competent substantial evidence clearly indicating that the prior negligence of the plaintiff in placing himself in a perilous position had terminated or culminated and from which the exercise of ordinary care on his part would not thereafter extricate him. See Merchants' *260 Transportation Co. v. Daniel, 109 Fla. 496, 149 So. 401, 403; Falnes v. Kaplan, supra.
The refused charge in the instant case was not a complete charge on the doctrine of last clear chance for plaintiff failed to include in it the added element that once plaintiff had placed himself in a perilous position through his own negligence the jury had to determine whether or not he could have extricated himself by the exercise of ordinary care. For if plaintiff had the opportunity to extricate himself from a perilous position by the exercise of ordinary care and failed to do so, then his negligence in the first instance would not be deemed terminated or culminated but would continue and constitute contributory negligence.
In the instant case did appellant's negligence terminate or culminate in a perilous position from which he could not extricate himself by the exercise of due care? The evidence in this case clearly indicates that appellant had not been put in any position of danger from which he could not extricate himself and his negligence had not ceased. To terminate his own negligence he had but to step aside when he became aware, or should have become aware, of the approaching vehicle and he should have been prepared to do that because he knew he was in a place where vehicles were likely to pass.
It is our opinion the lower court did not commit error in refusing to give the charge as drawn.
Affirmed.
ALLEN, Acting Chief Judge, and THORNAL, CAMPBELL, Associate Judge, concur.