115 So.2d 597 (1959)
Marjorie K. SHATTUCK and J.A. Chesson, Jr., d/b/a Prince Aviation Company, Appellants,
v.
Robert W. MULLEN, Appellee.
No. 1164.
District Court of Appeal of Florida. Second District.
October 30, 1959.
Rehearing Denied November 24, 1959.
*599 Charles F. Clark, Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
Peyton T. Jordan, Jr., Jordan & Jordan, Tampa, for appellee.
ALLEN, Chief Judge.
The appellee, who was the plaintiff in the lower court, filed an action ultimately alleging in his amended complaint that while plaintiff was landing his aircraft at Peter O. Knight Airport in Tampa an aircraft owned by defendants collided with plaintiff's aircraft. The amended complaint also alleged that defendant's aircraft was operated by one H.H. Bell who was being instructed by defendant Marjorie Shattuck, the person in command of the aircraft. Negligence was alleged against both occupants of defendant's aircraft, and that because of this collision plaintiff sustained permanent injuries. The defendants filed a counterclaim which was apparently abandoned, and then answered denying any negligence and alleged contributory negligence of the plaintiff as a defense.
Trial was had which resulted in a jury verdict and judgment thereon in favor of plaintiff in the amount of $32,500.
The collision occurred at Peter O. Knight Airport in Tampa on December 9, 1956, at 11:15 A.M. This airport does not have a control tower but is operated according to Civil Aeronautic Rules, and, where not in conflict, according to Rules of the Hillsborough County Aviation Authority.
The plaintiff, who was flying for the third time solo, was operating an Aeronca aircraft; and defendant's plane, a Cessna, was occupied by Mrs. Marjorie K. Shattuck, and a student pilot, H.H. Bell.
The defendant aircraft was in the process of a touch and go landing, having approached the airport in the traffic pattern for runway no. 3, a 4,000 foot runway extending from southwest to northeast at 37 degrees. The final approach was made from southwest toward the northeast.
The plaintiff flew the traffic pattern for runway no. 10, a 2,000 foot runway which *600 runs east-west, 109 degrees from true north. His final approach was from west to east.
The flight procedure at this airfield briefly stated is as follows:
In pursuing a traffic pattern approach to the airport, the pilot enters the pattern on what is referred to as the "down wind leg" which is parallel and 2,000 feet to the right of the runway upon which he expects to land. The planes in this case were at an altitude of 600-800 feet at this point. Upon entering the down wind leg, the pilot continues in a straight course parallel to the runway to a point 1,000 feet beyond the end of the runway. At that point he will have descended to an altitude of not less than 400 feet; and he then makes a 90 degree turn to the left, called "the base leg," traveling the 2,000 feet to a point approximating the end of the runway he is approaching, and descending all the while to a minimum altitude of 200 feet. At the end of the base leg, he makes another 90 degree turn to the left and begins his final approach to the runway which should be approximately 1,000 feet dead ahead.
The defendant was making a touch and go landing at the time of the accident. In a touch and go landing, the pilot of the aircraft brings it down onto the runway in the above described manner, rolls along the runway without coming to a stop, and then proceeds into the air again. In the instant case, the defendant aircraft landed on runway no. 3 in a northeasterly direction. The defendant aircraft touched down on runway no. 3 at a point in the first third of the runway, rolled for a distance of 50-75 feet at 35-40 miles per hour and, upon reapplying power, became airborne again, proceeding to a point at which Mrs. Shattuck observed the aircraft operated by the plaintiff coming from her left and approximately 100 feet away. At that point, both aircraft were 25-50 feet above the ground. Mrs. Shattuck immediately took control of the plane and made a hard right turn to avoid a collision. She felt an impact against the plane but was able to land her plane in a normal manner.
The plaintiff was landing headed east on runway no. 10. Plaintiff testified that after flying over some trees he saw an aircraft near the end of runway no. 3, which was being used by defendant. Plaintiff proceeded on toward and above his runway no. 10 to the intersection with runway no. 3, when he saw an aircraft "just to my right." He was unable to estimate the distance of this other aircraft or state whether it was above or below him. After the collision, plaintiff's aircraft nosed over and crashed, injuring plaintiff severely.
During the trial both parties maintained that the other should have seen the approaching aircraft and thereby avoided the accident. The trial court, over objections by defendant, instructed the jury on the last clear chance doctrine in that defendant should have seen the plaintiff in his "perilous position" and thus should have avoided the accident.
The Supreme Court of Florida in Peavy v. City of Miami, 146 Fla. 629, 1 So.2d 614, 618, declared the Florida law to be that the degree of care to be exercised by an aviator in the operation of his aircraft is as follows:
"* * * Looking to the general law, we find the authorities are unanimous in the following view:
"`In the absence of statutes covering the operation and management of airplanes at the time and place of an accident, specifically applicable to the issue of negligence in the operation thereof, the rules of law applicable to torts  the ordinary rules of negligence and due care  obtain. Thus, the rule of the common law that every person shall use ordinary care not to injure another, that is, such care as the great mass of mankind would use under the same or similar circumstances or such care as the ordinarily prudent person would use under the same or similar *601 circumstances, applies. An aviator is under no duty to use the highest degree of care that men of reasonable diligence or foresight ordinarily exercise in the operation of airplanes, but is bound only to use ordinary care, although here, as in any other case, ordinary care differs under the circumstances. The care must be commensurate with dangerous consequences to be reasonably apprehended; it may be a very high degree under some circumstances and of a slight degree under others.' 6 Am.Jur. 16, Aviation, Sec. 23.
"See, also, Parker v. James Granger, Inc., 4 Cal.2d 668, 52 P.2d 226; 6 Am. Jur. 19, Aviation, Sec. 28; 2 C.J.S. Aerial Navigation § 19, p. 907, and cases cited therein."
In the case of Grain Dealers Nat. Mut. Fire Ins. Co. v. Harrison, 1951, 190 F.2d 726, 729, the Court of Appeals, Fifth Circuit, after reviewing the legal principles of the Florida cases pertaining to the dangerous instrumentality doctrine as applied to automobiles stated:
"* * * Our examination of these authorities and the reasoning underlying their pronouncements leave no room for doubt that, under Florida law, by which we are here governed, the airplane should be similarly classified with the automobile as `a dangerous agency when in operation.' We can perceive no logical basis for any difference of classification which would authorize a holding that the rule of `dangerous agency' or `dangerous machine', which the Florida law applies to automobiles in operation, should be relaxed in the case of an airplane * *"
This court accordingly will discuss the applicability of the last clear doctrine to the instant case involving an aircraft collision in the same manner as this doctrine has traditionally been applied to automobile cases in Florida.
The decisive question presented to this court is whether or not the trial court erred in the circumstances we have related in charging the jury on the doctrine of last clear chance.
Numerous cases and articles have been written discussing the doctrine since its origin in the celebrated case of Davies v. Mann, (1842) 10 Mees. & W. 548, 152 Eng. Reprint 588, 19 Eng.Rul.Cas. 190. No attempt will be made to make an exhaustive survey of the cases in which this doctrine has been applied. Factual situations involving almost every dangerous area of human activity have been subjected to instructions on or applications of last clear chance principles. For illustrations of some of these varied situations see Annotation 92 A.L.R. 47; Annotation 119 A.L.R. 1041; Annotation 171 A.L.R. 365; and injuries on miniature railway, injuries by motorboat, injuries on roller coaster, injuries on scenic railway, 66 A.L.R.2d 707.
The only case our research has produced in which the doctrine was applied involving a collision between flying aircraft is Ebrite v. Crawford, Cal. App., 5 P.2d 686, affirmed 215 Cal. 724, 12 P.2d 937. In the Ebrite case the District Court of Appeal held that the trial court erred in giving the instruction on last clear chance on the ground that failure to discover the dangerous situation of the plaintiff cannot be substituted for actual knowledge. We note however, that this state does not follow that theory of the doctrine for in Wawner v. Sellic Stone Studio, Fla. 1954, 74 So.2d 574, 579, the Supreme Court stated:
"What is said here about the last clear chance is based upon that doctrine as applied to a situation where a defendant actually sees a person in a position of danger. Some jurisdictions confine the doctrine to cases where the defendant had knowledge of another's position of peril, 61 C.J.S. Motor Vehicles § 493(3), p. 128, but this jurisdiction holds that the doctrine is applicable, under appropriate *602 circumstances, where a defendant although he did not see plaintiff's peril could have done so in the exercise of reasonable care. Miller v. Ungar, supra [149 Fla. 79, 5 So.2d 598]; Merchants' Transport Co. v. Daniel, supra [109 Fla. 496, 149 So. 401]."
The classic example of the doctrine of "last clear chance" is where a plaintiff, through his negligence, has placed himself in a position of peril in which he is helpless. In this situation the plaintiff can recover despite his negligence if the defendant, after he knew or should have known of plaintiff's peril, had the last clear chance to avoid injuring the plaintiff by the exercise of ordinary care and failed to do so. Merchants' Transp. Co. v. Daniel, 109 Fla. 496, 149 So. 401; Miami Beach R. Co. v. Dohme, 131 Fla. 171, 179 So. 166. However, if the plaintiff has the opportunity to extricate himself from the perilous position by the exercise of ordinary care, and fails to do so, his negligence in the first instance will not be deemed terminated or culminated, but continues and constitutes contributory negligence. Edwards v. Donaldson, Fla.App. 1958, 103 So.2d 256.
The conditions under which the doctrine is ordinarily applied are: (1) that the plaintiff has already come into a position of peril; (2) that the defendant then or thereafter becomes, or in the exercise of ordinary care ought to become, aware not only of that fact, but also that the plaintiff either reasonably cannot escape from peril, or apparently will not avail himself of opportunities open to him for doing so; (3) that the defendant subsequently has the opportunity, by the exercise of reasonable care, to save the plaintiff from harm; and (4) that the defendant fails to exercise such standard of care. 23 Fla.Jur. Negligence, sec. 90; 38 Am.Jur. Negligence, sec. 217; Parker v. Perfection Co-op. Dairies, Fla.App. 1958, 102 So.2d 645. It would logically follow that in order for the doctrine to be applicable, it must be shown that the defendant was negligent in failing to avoid the accident after actual or implied knowledge of the situation with sufficient time to act on it, and that the plaintiff's negligence did not continue up to the moment of injury and was not an efficient cause of the injury. Lindsay v. Thomas, 128 Fla. 293, 174 So. 418.
The State of Florida and the majority of other jurisdictions take the proximate cause view of the doctrine of last clear chance. The Supreme Court of Florida held in Merchants' Transp. Co. v. Daniel, supra, that the doctrine of last clear chance [109 Fla. 496, 149 So. 403]:
"* * * does not permit one to recover in spite of his contributory negligence, but merely operates to relieve the negligence of a plaintiff or deceased in a particular instance, which would otherwise be regarded as contributory, from its character as such. This result it accomplishes by characterizing the negligence of the defendant, if it intervenes between the negligence of plaintiff or deceased, and the accident, as the sole proximate cause of the injury, and the plaintiff's antecedent negligence merely as a condition or remote cause. The antecedent negligence of the plaintiff or deceased having been thus relegated to the position of a condition or remote cause of the accident, it cannot be regarded as contributory, since it is well established that negligence, in order to be contributory, must be one of the proximate causes * * *"
This view was again stated in Dunn Bus Service v. McKinley, 130 Fla. 778, 178 So. 865, 867, in the following manner:
"Our view is that the doctrine of `last clear chance' is but one of many applications of the principle of `proximate cause' to the facts of the particular case or cases as they arise, which principle of proximate cause has of course always been recognized by this court as one of the elements entering into actionable negligence * * *"
*603 Thus, although certain elements requisite to the applicability of the doctrine can and have been defined, a re-examination of the numerous decisions on the subject supports the view that no definite rule can be stated with reference to specific factual situations in which the charge should or should not be given. Each case must be decided on its own circumstances. Falnes v. Kaplan, Fla. 1958, 101 So.2d 377. Accordingly, we must now more closely examine the facts of the instant case which are determinative of this issue.
The record and admissions of the parties agree that the plaintiff in making his final approach for landing without observing the entire field in a prudent manner constituted negligent conduct. The record and admissions likewise support the fact that the defendant in failing to carefully observe the area for other aircraft activity constituted negligent conduct. The record, however, fails to demonstrate at what point the plaintiff's negligence was relegated to a remote causation of the accident and when defendant's negligence became the proximate cause.
The record discloses that plaintiff's view from his Aeronca aircraft was superior to that of the defendant from the defendant's Cessna aircraft. The plaintiff testified that after his aircraft cleared the trees at the west end of runway 10, he saw a parked aircraft at the southwest end of runway 3. Subsequent to seeing the parked aircraft referred to, the plaintiff testified that he then looked at "all my runways." The record shows also that nothing obstructed plaintiff's vision and that, in fact, he had the visual advantage of being higher and coming down, thus having no wing between him and the surrounding area. Consequently there would be nothing to affect his direct or peripheral vision. The plaintiff stated, however, that he did not see the defendant aircraft until the instant before the collision.
During the time that plaintiff was making his descent to runway 10, the defendant aircraft approached runway 3 in a northeasterly direction. The defendant aircraft was landed by H.H. Bell, the student, on the first third of the runway. This would place the point of touch-down in the first 1333 feet of the 4000 foot runway. It touched the ground at approximately 40 miles per hour, slowing somewhat thereafter, rolled 50 to 75 feet, and took off again. Mrs. Shattuck, the instructor, testified that during this landing and take-off she was watching to see how the student was flying and if he needed any help. There is testimony which indicates that side vision is limited in the defendant aircraft due to a wing support. It is also pointed out that while the defendant aircraft was landing and on the ground, the upward line of vision would be limited.
When defendant Shattuck was questioned concerning when she first personally observed the plaintiff's aircraft, she replied:
"A. Well, I would  I couldn't say exactly now  of course, this is just an estimate, because your airplane is moving along and things do happen pretty fast, but I would say that he was probably 100 feet away from us when we were somewhere along in here, before we reached this intersection right here. (Indicating.)
"Q. And when you saw his aircraft, what did you do? A. I immediately made a turn to the right as hard as I could to try and avoid what would appear to be a collision. He was coming down at us from this direction, (indicating) and I turned the airplane as hard as I could to the right to steer away from him.
"Q. Would he have been coming from slightly behind you all? A. He would have been behind us. As you can see, that is less than 90 degrees; its more like 70 degrees, which would have, of course, and all the time we were along in here would have put him behind our line of sight."
*604 Considering the evidence and testimony in light of the extremely short duration of time involved, the inescapable conclusion is that the defendant, Mrs. Shattuck, saw the plaintiff's aircraft either an instant before or at the same time that plaintiff saw her aircraft. The testimony adduced also shows that the defendant took instant evasive action upon becoming aware of plaintiff's perilous situation.
As we stated previously, the doctrine of last clear chance is inapplicable where the opportunities of the plaintiff and the defendant to discover each other are co-extensive. Davis v. Cuesta, 145 Fla. 471, 1 So.2d 475.
In the case of Lee County Oil Company v. Marshall, Fla.App. 1957, 98 So.2d 510, 513, a fire truck while traveling through an uncontrolled intersection was struck by defendant's transport. The defendant's driver failed to see the fire truck or hear its siren in time to avert the collision. The driver stated that a store building located at the corner of the intersection obstructed his power of observation. The lower court, at plaintiff's request, instructed the jury on the doctrine of last clear chance. The District Court of Appeal, First District, stated in reversing the cause:
"Included among the essential ingredients which must be shown as a prerequisite to the application of this doctrine is evidence showing that (1) the person seeking to avail himself of the doctrine had by his own negligence placed himself in a perilous position from which he either could not or would not extricate himself, (2) the party charged was aware of such peril, and had sufficient time and means by the exercise of reasonable care to have avoided the ensuing injury.
* * * * * *
"The application of simple mathematics readily establishes that not more than a fraction over one second could have elapsed between the time defendant's driver first observed plaintiff's vehicle and the instant of impact. Allowing a minimum of time for normal reaction, and notwithstanding the testimony of defendant's driver that it was his opinion and best judgment that he could halt his vehicle within a distance of twenty feet, it must be conceded that the transport driver would have been required to act with the speed and precision of automation in order to have avoided the collision. As stated by the Supreme Court of Florida in a similar situation: `Such an application of the doctrine [of the last clear chance] would require reaction of super human speed for the time between the discontinuance of their [plaintiff's] driver's negligence and the occurrence of their injury would be reduced to a flash, during which the driver of the [defendant's] truck would be expected to take advantage of the last clear chance to avoid the injury.' It has been repeatedly held that when time will not permit the party charged to avoid the collision by the use of normal faculties and the exercise of reasonable care, the doctrine of the last clear chance has no application and to charge the jury on this doctrine is error."
This court stated in Edwards v. Donaldson, Fla.App. 1958, 103 So.2d 256, 259:
"In applying the doctrine of last clear chance to a set of facts we much [sic] concern ourselves initially with the premise that in order to invoke such a doctrine it is necessary that there must be competent substantial evidence clearly indicating that the prior negligence of the plaintiff in placing himself in a perilous position had terminated or culminated and from which the exercise of ordinary care on his part would not thereafter extricate him. See Merchants' Transportation Co. v. Daniel, 109 Fla. 496, 149 So. 401, 403; Falnes v. Kaplan, supra.

*605 "* * * For if plaintiff had the opportunity to extricate himself from a perilous position by the exercise of ordinary care and failed to do so, then his negligence in the first instance would not be deemed terminated or culminated but would continue and constitute contributory negligence."
These cases illustrate the proximate cause rationale of the doctrine of last clear chance in that the plaintiff must show that his opportunities of observing the danger were less than those of the defendant. It is likewise necessary that the defendant actually discover, or in the exercise of reasonable care should discover, the perilous situation. We note, however, that in the instant case both aircraft simultaneously and negligently approached the danger zone. There is no evidence that defendant could have avoided the accident after becoming aware of plaintiff's peril. In fact, both aircraft became imperiled at the same time.
The annotation in 92 A.L.R. 128, previously mentioned, discusses this type situation and states in reference thereto:
"* * * When, however, the continuing negligence of the injured person in failing to discover his own danger and move out of the danger zone stands over against the continuing negligence of defendant in failing to discover the situation and avert the accident, it is difficult to understand how the doctrine of last clear chance may be applied consistently with the proximate cause view. * * *"
We conclude that the opportunities of the plaintiff and defendant being equal and the defendant having taken evasive action upon becoming aware of plaintiff's peril, the record fails to demonstrate the applicability of the doctrine of last clear chance under the previously cited decisions.
Accordingly it was error for the court to give the instruction to the jury for under the facts the appellee did not merit such a charge. The following observation on this point was stated by the Supreme Court in Yousko v. Vogt, 1953, 63 So.2d 193, 194:
"A trial judge when faced with a request for a charge upon the doctrine of the `last clear chance' should be extremely cautious. Such a charge should never be given unless the evidence clearly demonstrates its applicability. If this be not true, the giving of such a charge would either work an advantage to the plaintiff to which he would not be entitled or at least would tend to confuse, rather than aid, the jury in the performance of its duty."
Reversed and remanded for a new trial.
KANNER and SHANNON, JJ., concur.