STURGIS, Chief Judge
(dissenting).
At the close of plaintiff’s case and again ■at the close of all the evidence motions of the defendant Anchor Hocking for a directed verdict were denied. The jury returned a verdict for the plaintiff widow against defendants Bragg and Anchor Hocking and found defendant Henley & .Beckwith, Inc., not guilty. Bragg and Anchor Hocking filed motions for judgment notwithstanding the verdict and for a new trial, which were denied. Anchor Hocking sued out this appeal and Bragg joined therein, but it is interesting to note that Bragg’s brief herein is devoted exclusively to arguments supporting the validity of the judgment rendered against his ■co-defendant, appellant Anchor Hocking. There is no explanation of this anomalous situation which leaves Anchor Hocking in the practical position of the sole party appellant.
When the accident occurred the Anchor Blocking tractor-trailer was being driven, without the specific consent or knowledge ■of Anchor Hocking, by defendant Bragg who was not connected in any manner with Anchor Hocking. The conclusion of the majority is clearly based on the premise that Anchor Hocking impliedly consented to Bragg’s operation of the truck. I do not think the evidence permits that inference. Bragg was in fact an employee of ■defendant Henley & Beckwith, Inc., and just prior to the accident was engaged in installing a vacuum pipeline at the Maxwell House plant. That work was totally foreign to the normal loading and unloading operations on the premises in which Anchor Hocking was engaged and quite familiar.
Anchor Hocking’s driver, Mullaly, parked the truck in the private yard of the Maxwell House plant to await an opportunity to have it unloaded. He parked it near and parallel to a fence on the eastern edge of the yard and immediately adjoining the gate, then dismounted and went to the loading platform where he was engaged in a conversation with his brother, driver of another Anchor Hocking truck, when the accident occurred five or six minutes later. Before dismounting, however, he locked the air brakes on the trailer, set the mechanical hand brake on the tractor, and placed the tractor in reverse gear. He left the ignition key in the lock of the tractor.
Approximately seven minutes before the accident occurred defendant Bragg had completed his day’s work on the vacuum pipeline which he was installing and accompanied by his helper, B. C. Rodriquez, had started to leave the premises in a one-ton pickup truck driven by him but owned by defendant Henley & Beckwith, Inc., his employer. The yard at the Maxwell House plant was at that time congested by several tractor-trailer rigs, two of which interfered with Bragg’s ability to drive the pickup truck off the premises, one being a truck owned by a third party, Laney Duke Warehouse and Storage Company, and which was parked near the Mullaly truck when defendant Bragg came up toward the gate. Bragg’s helper, Rodriquez, asked one Andrew Carswell, the driver of yet another tractor-trailer truck owned by Laney Duke Warehouse and Storage Company, to move the obstructing Laney Duke truck, but Carswell declined to do so because he was not assigned to that particular unit. He did, however, ask the driver of that unit to move it and such was done, leaving the Mullaly truck blocking Bragg’s exit. Mr. Carswell testified that at that *860 point Bragg made the following statement concerning the Anchor Hocking truck: “If these — none of these g. d. s. o. b.’s will move the truck, I will do it myself.” He then got out of the pickup truck, got in the Anchor Hocking truck, started the engine, placed it in gear and tried to move it forward, whereupon the tractor began to bounce up and down but no forward movement resulted, from which he concluded that the brakes were locked.
At that time one Lewis Anderson, an employee of Anchor Hocking, whose duty it was to unload and receipt for the contents of its trucks at said plant, was standing at the side door of another Anchor Hocking truck that had been backed up to the platform for unloading purposes. He saw Bragg in the Mullaly truck, noticed that the tractor was bouncing up and down, called out that the brakes were on and went over to the truck, a distance of 45 to 50 feet, where he had some conversation with Bragg about the brakes and in the course of which suggested that Bragg pull down the brake lever on the right side of the steering wheel so as to release the brakes. At that time some other person present observed that the lever should be pulled upward and Anderson agreed. Bragg then pushed the brake lever upward, an escape of air was heard, and the truck began to roll forward and continued until it struck and killed the deceased.
Witness Andrew Carswell testified that the engine on the truck was running as it moved forward and that it stalled and came to a stop upon impact with the other truck. Another witness, Lewis Anderson, testified to the same effect. Bragg testified, however, that he cut off the engine before the truck moved forward, that he stepped on the brake pedal but the truck did not stop, that he then called out, “Look out, no brakes,” that he jammed the truck into gear and pulled back the hand brake, and it was only then that the truck struck the deceased. Carswell, who had been standing with the deceased immediately prior to the accident, promptly opened the door of the tractor, pushed Bragg over to the right of the cab, started the motor, and backed up the truck. He testified that he found the ignition at the “on” position,, and that the truck gear was in a forward position. After backing it away from the point of impact he set the brakes but did not notice the air pressure gauge at that time. Approximately 45 minutes later Mul-laly checked the brake system on the truck, found it to be operating properly, and noted that the air pressure was in excess of 60 pounds. Carswell came over and at that time also noted that the air pressure was-in excess of 60 pounds. He also saw Mul-laly drive the truck forward five or six feet and apply the foot brake, causing the trailer wheels to lock.
The only ownership identification on the truck was the lettering “Anchor Hocking” on the tractor doors. Its employees did not wear any distinguishing uniform or device to identify themselves as such. Witness Lewis Anderson had been in the employ of Anchor Hocking approximately one year, but when the accident occurred had been working at the Maxwell House plant for only two weeks. He was not a truck driver and did not know how to operate a tractor-trailer rig. His employment and responsibility was limited to the unloading of Anchor Hocking trucks at the Maxwell House plant. There is no evidence upon which to conclude that he had any control or authority over the handling of the Anchor Hocking truck.
A. G. Horton, an expert witness for plaintiff, examined the Anchor Hocking truck one month and six days after the accident. He started the engine, pumped the air pressure in the brake drum up to 105 pounds, tiren with the engine off and the trailer brakes applied ran a test for 20 minutes, from which he found that the brake drum leaked pressure at the rate of one pound per minute. He testified that a leak of that amount was not unusual and that the vehicle maintenance manual speci *861 fies a leakage tolerance of two to three pounds per minute. He testified that the trailer brakes would not go into emergency-lock on a slow leak down but admitted that he did not examine to determine and did not know whether the emergency relay valve on the truck was or was not designed to operate on a slow leak down of air. He testified that with a normal load the truck, moving at 10 miles per hour, could safely be stopped with 40 pounds of air, and acknowledged that he was not qualified to give an opinion as to the minimum air pressure at which the truck could be safely operated.
John Kalter, an expert witness for defendant Anchor Hocking, testified there are two types of air brake emergency relay valves in use, one of which goes into emergency operation and locks the trailer wheels on a slow leak down of air and one that does not go into emergency under such circumstances. He testified that a relay valve of the latter type would lock the trailer wheels if the brakes were applied with less than 60 pounds of air pressure. On a hypothetical which assumed as true the within stated facts in evidence up to the point where defendant Bragg released the hand valve and a hissing of air was heard, he testified that such hissing of air demonstrated there was at that time sufficient air to hold the tractor brakes locked and to operate the system even if the engine had been cut off when the truck rolled forward. He further testified, in effect, that since the air brake system had sufficient pressure to hold the truck in place against the pull of the engine with the truck in gear, there was sufficient air pressure in the brake drum to stop the truck several seconds later. He also testified that with the engine running it required 2 to 21,4 minutes to build up the air pressure in the drum from zero to full operating pressure; that only one minute was required to increase the pressure from 40 to 60 pounds; and that when the brakes are released the air exhausts from the brake chambers rather than from that part of the air brake system which operates to stop the truck when the brakes-are again applied; that in order to hear the escape of air upon release of brakes,, at least 20 pounds of air pressure must be in the system and that such would hold' the truck against the motor pulling with brakes on and would stop it on application of the brakes. He also testified that an air leak of one pound a minute is normal and does not indicate any deficiency in the air brake system.
The gravamen of the charge of negligence against defendant Anchor Hocking; was knowledge of defective brakes on its-tractor-trailer truck and actual or implied knowledge of the probable results of its-conduct. Springer v. Morris, 74 So.2d 781 (Fla.1954). It was the burden of the plaintiff to establish these factors by a preponderance of the evidence and failure to do so was compelling ground for a directed verdict for said defendant. Smith’s Bakery, Incorporated, v. Jernigan,. 134 So.2d 519 (Fla.App.1961).
The only evidence to the effect that the brakes on Anchor Hocking’s truck were-faulty at that time is the uncorroborated self-serving testimony of defendant Bragg. The mentioned testimony of plaintiff’s expert witness, Horton, is insufficient to warrant the conclusion that the brakes were faulty and, on the contrary, is altogether consistent with Anchor Hocking’s contention that the overwhelming weight of the evidence shows that the braking system-on its truck operated efficiently for all purposes material to the issues governing, this unfortunate accident. As noted, plaintiff’s witness Horton testified that his examination of the truck disclosed that the air pressure controlling the brakes was within the manufacturer’s standards of tolerance.
It is the primary theory of plaintiff’s; case against defendant Anchor Hocking that its driver, Mullaly, for whose acts-it is responsible, was negligent (a) in leaving the ignition key in the lock because *862 it was foreseeable that one as inexperienced as defendant Bragg proved to be might undertake to operate the truck and negligently produce the resulting accident, and (b) that in any event the braking system -on the truck was not functioning properly and that this was an independent proximate cause for the accident. I am persuaded that the evidence in this cause is wholly insufficient to support either of said predicates as the proximate cause of "the accident, and that under such circumstances it is the duty of this court to vacate the judgment appealed. New Deal Cab Company v. Meyer, 139 So.2d 189 (Fla.App.1962).
The issue here depends on whether the evidence permits the inference that it was •reasonably foreseeable to Anchor Hocking "that a person such as defendant Bragg, 'having no experience in the operation of such a vehicle and having no connection with the business upon which it was engaged, would at the time and under the attending circumstances attempt to operate it. It is not disputed that the ignition 'key was left in the lock, hence the issue •of foreseeability in relation to proximate cause is one of law for the court to determine and I think that of necessity it should have been resolved favorable to the contention of defendant Anchor Hocking that such act was not a proximate cause contributing to the fatal accident. The applicable rule is found in Smith v. City Products Corporation, 147 So.2d 590 (Fla.App.1962), Bryant v. Atlantic Car Rental, Inc., 127 So.2d 910 (Fla.App.1961), and "Lingefelt v. Hanner, 125 So.2d 325 (Fla.App.1960).
In the Lingefelt case an unauthorized ■person who took possession of and drove the defendant owner’s automobile in which the ignition key had been left was involved in a collision with the plaintiff who sued the owner for damages. The District Court ■of Appeal, Third District, aligned itself •with the majority view in holding that the ■determinative issue was one of causation and that the willful act of the unauthorized driver was an independent intervening cause which operated to relieve the owner of liability, citing numerous cases from other jurisdictions. The court said:
“While it is true that proximate cause is normally a question of fact to be submitted to the jury, however, where the facts are not disputed and are susceptible of only one inference, this issue becomes one of law for the court to determine.” (Emphasis supplied.)
The same rationale is found in the Bryant and Smith cases, supra. The Smith case is clearly distinguishable from the case on review because the evidence there positively reflected that the driver of the truck involved was conscious of the likelihood that his guest passenger, a 15-year-old boy, might undertake to operate the vehicle on some occasion when the driver left him alone with it; that he twice cautioned the boy not to do so, but nevertheless left the ignition key in the truck during an absence, whereupon the boy did operate the truck so negligently as to produce the accident resulting in the suit. Under such circumstances it is obvious that the question of foreseeability was one of fact .and as such was properly submitted to the jury for its determination.
In the Bryant case the Second District Court of Appeal affirmed a final judgment for defendant, Atlantic Car Rental, Inc., entered on the pleadings in a suit wherein it, as owner of an automobile leased to its co-defendant, Robert Skinner, was charged with negligence arising from the fact that Skinner left the automobile parked and unattended on a public street with the keys openly displayed in the ignition lock, which automobile was stolen by a youth who negligently drove it into one owned and operated by plaintiff’s husband, killing him instantly and destroying his car. The court, speaking through Judge Kanner, adhered to the decision in the Lingefelt case and laid down the following rule in *863 line with what it characterizes as “the near unanimity of the holdings”:
“ * * * in the absence of a prohibitory statute or ordinance, an owner or operator of an automobile who leaves it unattended with key in the ignition switch is not liable for negligent operation of the automobile by one who steals it.”
It is seen, therefore, that there is no difference in the legal effect upon the owner resulting from the act of one who operates such an automobile without his authority but with no intent to steal the vehicle, as in the case on review, as compared with one who operates it in the course of stealing same.
I do not think the evidence in this case is susceptible of any reasonable conclusion or inference that Mullaly, the driver of Anchor Hooking’s truck, by leaving the ignition key in the lock evidenced an intention to permit a person having no experience whatever in the operation of such tractor-trailer type of truck, equipped with air brakes, to operate the same, or had reason to suspect that one such would attempt to operate it; more specifically, that the evidence does not permit the inference that it was reasonably foreseeable to Mul-laly that a person having no more qualifications than Bragg to operate the truck would at that time and place and under the existing circumstances attempt to do so. Indeed, taking the evidence as a whole, it is clear that the type of vehicular traffic normally found on the Maxwell House plant premises was such that there are only two reasonable inferences to be drawn from Mullaly’s act of leaving the key in the truck: (1) That it was the custom to do so in order to permit a capable person engaged in similar work to move the truck if necessary or expedient to do so, hence that act is not negligent per se. (2) That regardless of custom, Mullaly anticipated that some experienced truck driver might wish to move the truck as an incident to the hauling and unloading operation being conducted on the premises, and by leaving the key in the lock impliedly authorized such person to do so. This inference can be drawn only in consequence of the following colloquy in the course of the cross-examination of Mr. Mullaly:
“Q. In other words you were aware you were blocking the gate?
“A. That is right.
“Q. At that time you left the key in the switch, did you not?
“A. I certainly did.
“Q. And, the reason you left the key in the switch, you realized that the tractor-trailer might be in somebody’s way, didn’t you?
“A. That could be one of the reasons. In other words it was normal procedure at that time.
“Q. That was the reason wasn’t it?
“A. I answered once before that was the reason for it.”
I am unable to extend the import of that testimony so far as to hold that the jury was warranted to conclude that Anchor Hocking’s driver impliedly authorized anyone who found the Mullaly truck impeding his way to remove it. I suggest there is nothing in it from which to logically conclude that the driver, Mullaly, intended to permit or could have reasonably foreseen that a person having no experience in the operation of such a vehicle would be so reckless as to abruptly undertake-to do so.
It seems obvious that if we are to maintain the rule, as I think we should, that the owner’s liability is not to be extended to include circumstances where he has left the key in a motor vehicle on the public ways and it is stolen and involved in an accident, there is no basis upon which leaving a key in a truck for the purposes reflected by this case and with the result here obtaining should operate to create liability on the part of the owner. To da *864 so places an altogether impractical and intolerable burden on persons engaged in a normal business enterprise such as here involved.
For the reasons stated, I am of the ■opinion that the trial court erred in denying defendant Anchor Hocking’s motion for a directed verdict made at the close of all the evidence. Even assuming there is some scintilla of evidence upon which the trial court could have properly submitted the case against Anchor Hocking to the jury, I am also of the opinion that the probative force of the evidence was ■such that the verdict indicates the jury was swayed by passion or prejudice and that the ends of justice require that a new trial be granted to said defendant. I would affirm the judgment as to defendant Bragg.
I therefore dissent.