CARROLL, DONALD K, Judge.
The plaintiffs in a negligence action have appealed from a final judgment for the defendants entered by the Circuit Court for Volusia County, based upon a jury verdict.
The principal question presented for our determination in this appeal is whether, under the evidence at the trial, the Circuit Court committed reversible error in refusing to instruct the jury concerning the doctrine of the last clear chance.
The plaintiff Scott T. Wilder,’ a minor (hereinafter referred to as Scott), by his mother and best friend, also suing individually, filed their complaint against the defendant-appellee, claiming damages resulting from a collision between a bicycle *776 ridden by Scott and an automobile being negligently driven by the defendant, on State Road No. 11 in Flagler County.
To this complaint the defendant filed her answer, generally denying the allegations of the complaint, pleading that she was not guilty, and alleging as an affirmative defense that Scott was contributorily negligent in the operation of the bicycle, and that the plaintiff mother was contribu-torily negligent in permitting Scott to operate the bicycle under the circumstances.
Upon the issues thus framed by the parties’ pleadings, this case went to trial before a jury, which returned a verdict for the defendant.
The evidence adduced by the parties at the trial was, briefly stated, substantially as follows:
On the date in question Scott, then eleven years old, left his home just west of a bridge crossing an intercoastal canal in Flagler County, to go to a Boy Scout meeting, scheduled for 7:30 P.M. To get to that meeting he was riding his bicycle in an easterly direction in the eastbound lane on Highway 11, a two-lane road running east and west. The lights of a westbound car caused him to pull to the right edge of the road, when the defendant driving an automobile in an easterly direction, collided with the bicycle in such a way that the rear wheel of the bicycle was bent into a V shape and Scott was thrown into the air, hitting the automobile and the pavement, so that Scott suffered serious injuries. Scott’s body landed at about the back fender and his bicycle was lying off the road on the shoulder.
The collision occurred on the south side of the highway, which road is 20 feet wide. At the time of the collision the weather was clear. Scott testified that, when he left his home shortly before, the sun had set but it was still twilight or dusk; that without lighting assistance he could see clearly a distance of 150 to 200 feet. Scott’s mother testified that it was quite light when he left home and that it was only a matter of minutes before she received a telephone call telling her about the collision.
The defendant’s car hit Scott from behind, and he testified that he did not know that there was a car behind.him. There were reflectors on the pedals of Scott’s bicycle and strips of reflector tape on the bicycle and on one of the pedals in addition to the pedal reflectors.
The defendant’s trial testimony was somewhat at variance from the foregoing. She testified that it was dark when she left her home five or ten minutes before the collision; that her headlights were working normally, their light extending from her car for about 50 feet; that a car from the east going west driving with its beam lights caused her to slow down and apply her brakes; that, as she did so, something hit the side of her car; that, when she stopped her car, she saw that it was Scott, whom she knew. The testimony of the defendant’s daughter-in-law, who was riding in the car, was substantially similar to the defendant’s.
A defense witness, standing not far away from the scene of the collision, testified that it was just dark at the time, but he could see 50 to 75 feet without lighting assistance, that he heard the car apply brakes and then heard a little crash.
On the question of darkness, the defendant offered into evidence a sunset time chart over the plaintiffs’ objections, which were overruled by the trial court and the chart was admitted. Such admission is the subject of one of the appellants’ points on appeal and will be discussed later in this opinion.
On the above conflicting facts the cause went to the jury on the issues of negligence, contributory negligence, and damages. The trial court refused to give to the jury several instructions requested by the appellants on the doctrine of last clear chance, which refusal has given rise to the principal contention made by the appellants-plaintiffs in this appeal.
*777 It is our impression that few legal doctrines established in this state are so little understood generally as the doctrine of last clear chance. That doctrine presumably developed in the conscience of judges who perceived the injustice under the common law rule of barring a plaintiff forever from recovering damage against a negligent defendant when the plaintiff is guilty of contributory 'negligence — in circumstances when the plaintiff negligently placed himself in a hazardous position but the defendant nevertheless has a “last clear chance” to avoid the injuries. The doctrine of last clear chance that thus developed was not intended to remove entirely the bar of contributory negligence, but to remove the bar only when certain well-recognized conditions are met. Some of these conditions are discussed below.
In James v. Keene, 133 So.2d 297 (1961) the Supreme Court of Florida held that the following elements must exist in order to warrant a trial court’s giving of an instruction on the last clear chance doctrine:
“(1) That the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact, but also that the party in peril either reasonably cannot escape from it, or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care.”
The third condition named above by the Supreme Court is of the essence of the last clear chance doctrine, emphasizing the fact that the last chance afforded to the injuring party must be a clear chance. This point has been stressed in many appellate decisions. For instance, in Lee County Oil Co. v. Marshall, 98 So.2d 510 (Fla.App.1957), we held that one of the conditions for the application of the said doctrine is that the injuring party was aware of the position of peril in which the injured party had placed himself and that the injuring party had sufficient time and means by the exercise of reasonable care to have avoided the ensuing injury. We said in that case:
“It has been repeatedly held that when time will not permit the party charged to avoid the collision by the use of normal faculties and the exercise of reasonable care, the doctrine of the last clear chance has no application and. to charge the jury on this doctrine is error.”
To the same effect see Shattuck v. Mullen, 115 So.2d 597 (Fla.D.C.A.2d 1959).
Another rule pertinent in the present consideration is the rule recognized by our District Court of Appeal, Second District of Florida, in Gordon v. Cozart, 110 So. 2d 75 (1959), that a trial court should be “extremely cautious” in granting a request for a charge on the last clear chance doctrine, and such a charge should not be given unless the evidence clearly demonstrates the applicability of the doctrine. Furthermore, the Supreme Court held in Falnes v. Kaplan, 101 So.2d 377 (1958) that a charge on the last clear chance doctrine is not “a stereotyped or conventional one to be given generally in actions arising from the operation of automobiles.”
As this opinion is written, the latest expression of the Florida Supreme Court on the subject of giving jury instructions on the doctrine of last clear chance is in Bethel Apostolic Temple v. Wiggen, 200 So.2d 797, opinion filed on July 5, 1967. That court thus summarized the applicable rules:
“Instruction on the last clear chance should not be given unless the evidence clearly demonstrates its applicability. It must be shown the negligence of the injured person placed him in peril, that the driver of the automobile was put or should have been put on notice of such peril and, having the legal duty to avoid and the capability of avoiding the in *778 jury, failed to do so. As was held in the Merchants’ Transportation case ‘last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or proof of circumstances which will put the one charged to implied notice of the situation.’
“Because, in the matter sub judice, there is no evidence upon which to base the requisite assumptions of fact, we hold the trial court correctly refused to charge the jury on the doctrine of last clear chance.”
Applying the above rules to the case on appeal, we do not think that the trial evidence clearly demonstrates the applicability of the doctrine of last clear chance. Granting that the evidence shows that Scott had come into a position of peril, we do not think that the evidence clearly demonstrates that the defendant had a reasonable opportunity by the exercise of reasonable care to save Scott from harm. Therefore, we find that the trial court did not commit error in refusing to give the charges requested by the plaintiffs on the last clear chance doctrine.
As mentioned above, the appellants’ second point on appeal challenges the propriety of the trial court’s admission into evidence of a sunset chart introduced by the defendant. This chart is entitled “Sunrise and Sunset at Daytona Beach, Florida” and bears the signature and certificate of a U. S. Navy Captain as the Superintendent of the U. S. Naval Observatory, certifying that the data shown by the chart “are the result of an accurate and true computation by the Nautical Almanac Office, U. S. Naval Observatory * * * ”, an agency charged by a federal statute with the duty of making such computations and publishing them. The chart showed the times of sunrise and sunset for each day of the year at Daytona Beach, but no specific year was given on the chart.
This chart was offered into evidence by the defendants without formal proof of the chart’s authenticity. The plaintiffs failed to object to the admission into evidence of the said chart on the ground of the lack of such formal proof, but the plaintiffs’ counsel told the court, “My objection is it doesn’t show the year it would be applicable in, or any year to show it would have been applicable in ’62, or it would have been applicable in the Flagler Beach area in 1962.” To this the defense attorney responded that the chart is applicable for every year in the Daytona Beach area.
While the chart may have been inadmissible if the plaintiffs had objected on the ground of lack of formal proof, that objection was waived by the plaintiffs’ failure to object on that ground at the trial. See the statement of this rule in 2 Fla.Jur., Appeals, Sec. 86, page 421, and the cases cited therein. The plaintiffs’ failure to object on the ground of lack of formal proof resulted in the trial court’s attention not being brought to such objection and the defendants were not called upon to present the said formal proof.
On the face of it, the chart is purported to be applicable to the Daytona Beach area in any year. While the chart is specifically applicable to Daytona Beach, it is common knowledge, and the courts judicially know, that Flagler Beach, where the collision occurred, is not many miles north of Daytona Beach. We think, therefore, that the trial court did not err in admitting the chart into evidence over the plaintiffs’ specific objection; but, even if that action constituted error, we do not think that the plaintiffs have demonstrated that such error was prejudicial, harmful, or reversible error. While an important question at the trial was the condition of lightness at the time of the collision, the moment when the sum sets is not necessarily the exact moment of darkness. Besides, the time of sunset shown on the chart seems reasonably consistent *779 with most of the testimony of the eyewitnesses.
For the foregoing reasons, the final judgment appealed from herein should be and it is
Affirmed.
WIGGINTON, C. J., and JOHNSON, J., concur.